**EMERY AIR FREIGHT CORPO-
RATION, d/b/a Emery World-
wide, Appellant,**

v.

**GENERAL TRANSPORT SYSTEMS,
INC., Appellee.**

No. 14–95–00827–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 24, 1996.

William K. Luyties, Shannon Phillips Davis, Houston, for appellant.

Leigh Faoro Saint-Germain, Houston, Pamela P. Keenan, Raleigh, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

## OPINION

MURPHY, Chief Justice.

This appeal arises from a breach of contract action. Appellant, Emery Air Freight Corporation, d/b/a Emery Worldwide ("Emery") filed a suit for breach of contract against appellee General Transport Systems, Inc. ("GTS") for its failure to add appellant as an "additional insured" in its liability insurance policies. Emery filed a motion for summary judgment, and GTS filed a cross-motion for summary judgment. The trial court denied Emery's motion and granted GTS's, ordering that Emery take nothing and awarding attorneys' fees to GTS. In two points of error, appellant contends that the trial court erred in: (1) denying its motion for summary judgment and granting appellee's motion; and (2) awarding attorneys' fees without contractual or statutory support. We affirm the lower court's judgment.

■ The two parties entered into a contract (the "Cartage Agreement") under which appellee agreed to provide local delivery services in Beaumont, Texas and Lake Charles, Louisiana for appellant, a national freight service. This contract provided that appellee would add appellant as an "additional insured" under its liability insurance policies. Appellee admits it did not take this action. Subsequently, one of appellee's employees, Paul Goss, who was injured at the Beaumont facility,[1] successfully filed suit against appellant (the "Goss suit"). Appellant discovered that it had not been added to appellee's insurance policies when it called to report the employee's claim. Appellant then filed the instant case, claiming appellee's failure to comply with the "additional insured" provision of the Cartage Agreement led to damages in the amount of the *Goss* judgment, plus attorneys' fees.

The central issue in this case is whether the Cartage Agreement required appellee to insure appellant against liability arising from appellant's own negligence. Appellee acknowledges that the agreement required it to add appellant as an additional insured and that it failed to do so. Appellant contends that this provision of the Cartage Agreement shifted the risk of its own negligence to appellee's insurer and that appellee's acknowledged breach of this provision resulted in appellant incurring the costs of defending against, and paying the judgment in, the *Goss* suit.

### I. Summary Judgment

The standard to be followed in review of a summary judgment is well-established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

The Supreme Court has addressed the issue raised by this appeal twice before, in *Getty Oil Co. v. Insurance Co. of N. America,* 845 S.W.2d 794 (Tex.), *cert. denied,* 510 U.S. 820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993),

---

1. Appellee argued that the Beaumont facility was "owned or operated" by appellant, and appellant points to the Cartage Agreement, which provides that the "facilities ... required to perform the Services hereunder ... [are] under the exclusive charge and control of" appellee. Regardless, the *Goss* court's determination that appellant was solely liable for the injury at the Beaumont facility is not before this court.

and *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818 (Tex. 1972). The chief dispute here is which decision applies to these facts. Both *Getty Oil* and *Fireman's Fund*, like the appeal before us now, dealt with the interaction of an indemnity clause and an insurance clause in a contract. The *Fireman's Fund* contract had a liability insurance clause which required the contractor to obtain liability insurance in order to "protect the Owner ... against all liabilities, claims, or demands for injuries or damages to any person or property growing out of the performance of work under this specification." *Fireman's Fund*, 490 S.W.2d at 821. Another clause, appearing later in the contract, indemnified the owner from claims arising from the contract's performance (with the exception of those claims arising out of the owner's negligence). The *Fireman's Fund* court addressed whether the language of the insurance clause reflected an intention for the contractor to carry insurance covering the owner's negligent acts. In its analysis, the court noted first that the above-quoted language from the insurance clause was "insufficient to clearly indicate an intention to protect the contractor-indemnitee against liability for damages caused solely by the latter's own negligence." *Id.* at 822 (citing *Joe Adams & Son v. McCann Constr. Co.*, 475 S.W.2d 721 (Tex.1971)). Noting that "all of the relevant provisions of a contract should be considered in arriving at its intent and meaning," the court observed that other sentences in the insurance provision required liability insurance covering only the contractor's agents, employees, and vehicles. It also noted that the indemnity provision specifically excepted any assumption of the owner's negligence by the contractor. *Id.* After this careful consideration of the two clauses, the Court held that

> [w]e cannot agree ... that the requirement in Section 12 that Wallace carry certain liability insurance for the protection of General Motors evidenced an intention to cover negligent acts of the latter. While the meaning of the contract provisions relating to liability insurance are not clear, the most reasonable construction is that they were to assure performance of the

indemnification agreement as entered into by the parties. Such provisions are often required to guard against the insolvency of the indemnitor, and they should not be considered as evidence of intent to broaden the contractual indemnity obligation.

*Id.* At 823.

More recently, in *Getty Oil* the Court revisited this issue, under slightly different factual circumstances, and reached the opposite conclusion. The insurance and indemnity provisions of the *Getty* contract fell into the same clause; the first required the seller to carry liability insurance to protect the purchaser, and the second required the seller to indemnify the purchaser from claims "arising out of or incident to the performance or the terms of this Order...." *Getty Oil*, 845 S.W.2d at 796–97. The Court cited *Fireman's Fund*, but noted the two contracts were significantly different. The *Getty Oil* court observed that the indemnity provision contained an internal provision for insurance to support it, while the additional insured provision required the extension of coverage "whether or not required [by the other provisions of the contract]." *Id.* at 804. Based on this factual distinction from the *Fireman's Fund* contract, the court held the additional insured provision did not support the indemnity provision, but was instead a free-standing obligation. *Id.* at 804, 806.

Both of these cases addressed the "express negligence" rule, which was adopted outright by the Texas Supreme Court in 1987. *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex.1987). The express negligence doctrine provides that parties seeking to shield the indemnitee from the consequences of its own negligence must express such intent in specific terms, stated within the four corners of the contract. *Id.* at 708. In *Getty Oil*, the Court declined to extend this rule to insurance agreements. *Getty Oil*, 845 S.W.2d at 806. As such, an insurance agreement which stands alone can shift the risk of *insuring* against one party's own negligence to another party without a specific expression of intent, even though an indemnity clause cannot.

This case, then, requires a two-step analysis. First, we must determine whether the indemnity clause satisfies the express negligence rule, thereby indemnifying appellant against its own negligence. Second, we must determine whether the insurance clause merely supports the indemnity clause or stands alone, representing an independent obligation. The provisions of the Cartage Agreement in issue read as follows:

7. Contractor shall obtain and maintain at its own expense insurance in such forms and minimum amounts as set forth below naming Emery as an additional insured. Contractor shall furnish Emery certificates from all insurance carriers showing the dates of expiration, limits of liability thereunder and providing that said insurance will not be modified on less than thirty (30) days' prior written notice to Emery.

   Minimum Limits of Insurance:

   A. Worker's Compensation—Statutory

   B. General Liability Insurance—$1 Million Combined Single Limit

   C. Automobile Liability—$1 Million Combined Single Limit

   If Contractor fails to obtain and maintain the insurance coverage set forth above, Emery shall have the right, but not the obligation, to obtain and maintain such insurance at Contractor's cost or, at its option, to terminate this Agreement for cause as provided in Section 9 hereof.·

8. Contractor shall be solely responsible and liable for any and all loss, damage or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, including Emery shipments while in the Contractor's custody and control, arising out of or in any way resulting from the provision of services hereunder, and Contractor agrees to defend, indemnify and hold harmless Emery, its agents, servants, and employees from and against any and all loss and expense, including legal costs, arising out

of the provision of the services hereunder, by Contractor.

The general language of the indemnity clause (Clause 8) in the Cartage Agreement does not specifically express an intention to indemnify appellant against its own negligent acts, and as such, the express negligence rule forbids any such interpretation. *Ethyl*, 725 S.W.2d at 708. After the operation of the express negligence rule, the two clauses at issue in the Cartage Agreement resemble those in the *Fireman's Fund* contract more closely than those in the *Getty Oil* contract. Unlike *Getty Oil*, the indemnity clause has no internal insurance provision, and the insurance provision does not require coverage "whether or not required" by other clauses. Similar to *Fireman's Fund*, the insurance clause does not expressly cover negligence, nor does the indemnity clause, because of the application of the express negligence rule.

Appellant points to a parenthetical reference in the *Fireman's Fund* indemnity clause to the earlier insurance clause in order to distinguish it from the Cartage Agreement. While the Cartage Agreement's indemnity clause contains no such cross-reference, we find this to be a distinction without a significance. The court in *Fireman's Fund* does not rely on, or even refer to, the parenthetical cross-reference in its holding. The Cartage Agreement before us has none of the characteristics that the Supreme Court found made the *Getty Oil* contract "significantly different from that in *Fireman's Fund*." *Getty Oil*, 845 S.W.2d at 804. Like the *Fireman's Fund* contract, "the most reasonable construction" of the insurance provisions in the Cartage Agreement "is that they were to assure performance of the indemnity agreement as entered into by the parties." *Fireman's Fund*, 490 S.W.2d at 823. We overrule appellant's first point of error.

## II. Attorney's Fees

In its second point of error, appellant contends that the trial court erred in awarding attorneys' fees to appellee. Appellant raises two issues: 1) was the trial court's award of attorneys' fees contractually or statutorily justified, and if so, 2) were appellee's pleadings sufficient to support such an award? Paragraph 11 of the Cartage Agreement provides: "In the event that either party commences an action against the other

for any matter related to this Agreement, the non-prevailing party in such action shall pay all costs and expenses incurred in such action by the prevailing party." The term "prevailing party," for the purposes of awarding attorneys' fees, refers to a party who successfully prosecutes an action or successfully defends against an action on the main issue. *Weng Enter., Inc. v. Embassy World Travel, Inc.,* 837 S.W.2d 217, 222–23 (Tex.App.— Houston [1 Dist.] 1992, no writ). Attorneys' fees represent an "expense" incurred in the litigation. *American Airlines Inc. v. Swest, Inc.* 707 S.W.2d 545, 547 (Tex.1986); *Mundy v. Knutson Const. Co.,* 156 Tex. 211, 294 S.W.2d 371, 374 (1956). The Cartage Agreement provides clear contractual justification for the award of costs and expenses (including attorneys' fees) to appellee, the prevailing party in this action.

■ Appellant also argues that appellee's general prayer for relief did not entitle it to an award of attorneys' fees. We need not address this issue directly. Even if appellee's pleadings did not justify an award of attorneys' fees, appellant waived this error when it allowed the court to consider attorneys' fees without objection. When a party allows the court to try an issue without objecting to insufficient pleading, even in the summary judgment context, that party cannot raise the pleading deficiency for the first time on appeal. *Jaime v. St. Joseph Hosp. Found.,* 853 S.W.2d 604, 607 n. 2 (Tex.App.— Hous. [1st Dist.] 1993, no writ). "If the non-movant does not object to a variance between the motion for summary judgment and the movant's pleadings, it would advance no compelling interest of the parties or of our legal system to reverse a summary judgment simply because of a pleading defect." *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991). In this case, the trial court entered judgment for the appellees, including attorneys' fees, and then it instructed appellees to submit affidavits to determine the amount of fees. Upon receipt of the affidavits, the court entered an order for attorneys' fees, expenses and court costs in the amount of $13,667.99, with provision for an additional $6,000 "upon successful defense of trial court's judgment on appeal." Appellant did not object to appellee's failure to plead for attorneys' fees prior to the entry of the judgment or the order for attorneys' fees. Appellees expressly requested attorneys' fees in their motion for summary judgment, and because appellant "failed to direct the trial court's attention to the absence of the pleading in his written response or before the court rendered judgment, this complaint may not be raised on appeal." *Id.*

We overrule appellant's second point of error, and we affirm the judgment of the court below.