Reversed and Remanded and Majority and Dissenting Opinions filed May 24,
2005









Reversed and Remanded and Majority and Dissenting Opinions filed May 24,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00389-CV

____________

 

PEDRO AGUIAR AND
MARIA AGUIAR,
Appellants

 

V.

 

PAUL SEGAL AND
GEOFFREY ABADEE, Appellees

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 03CV1497

 



 

M A J O R I T Y   O P I N I O N








This is a breach of contract case.  Pedro and Maria Aguiar, the sellers, appeal
the trial court=s judgment awarding the appellees, the
buyers, specific performance of five earnest money contracts for the sale of
five parcels of real property.  The
sellers raise three issues on appeal, arguing: (1) there is no evidence or
factually insufficient evidence to support the trial court=s findings of fact
numbers 6, 7, 8, 11, 13, 15, 16, 18, 19, and 20; (2) the trial court=s conclusions of
law numbers 1, 3, 4, and 5 are erroneous; and (3) the evidence shows the
buyers, not the sellers, breached the five earnest money contracts by failing
to close the five sales within the time prescribed by the earnest money
contracts, and the sellers are entitled to recover on their counterclaim for
the earnest money paid under the five contracts and their attorney=s fees.  We reverse and remand.

BACKGROUND

In May 2003, the sellers, Pedro and Maria
Aguiar, and the buyers, California residents Paul Segal and Geoffrey Abadee,
entered into five earnest money contracts for the sale of four apartment
complexes and one residential duplex located in Galveston County, Texas.  The buyers agreed to pay the sellers
$1,140,000.00 for the five properties.  Pursuant
to the terms of the five contracts, the buyers deposited the required amount of
earnest money for each contract with Stewart Title Company, the escrow
agent.  The following list identifies the
five properties to be sold, each property=s respective sale
price, and the amount of earnest money deposited:

Property                          Sale
Price                       Earnest
Money

1.  1704 & 1706 Ave. L     $280,000.00                    $5,000.00

2.  6919 Ave. O                $
65,000.00                     $  500.00

3.  1010 63rd Street                   $160,000.00                    $1,000.00

4.  2719 Ave. P                $150,000.00                    $1,000.00

5.  1602 Texas Ave.                   $485,000.00                    $5,000.00

Total                     $1,140,000.00                 $12,500.00

Each of the contracts specify Atime is of the
essence@ and contain
integration clauses.  The integration
clauses generally provide that the contract contains the entire agreement of
the parties and may not be changed except in writing.  Both parties agree there is no other written
agreement by the parties that purports to change any provision of the earnest
money contracts.  The contracts also
contain the following provision governing the remedies available to the buyers
and sellers in the event of a default by the other party:

15.     DEFAULT:

A.      If Buyer fails to comply with this
contract, Buyer is in default and Seller may:








(1)     terminate this contract and receive the
earnest money as liquidated damages, thereby releasing the parties from this
contract; or

(2)     enforce specific performance, or seek other
relief as may be provided by law, or both.

B.      If, without fault, Seller is unable within
the time allowed to deliver the estoppel certificates or the commitment, Buyer
may:

(1)     terminate this contract and receive the
earnest money, less any independent consideration under paragraph 7B(3)(a), as
the sole remedy; or

(2)     extend the time for performance up to 15
days and the closing will be extended as necessary.

C.      Except as provided in Paragraph 15B, if
Seller fails to comply with this contract, Seller is in default and Buyer may:

(1)     terminate this contract and receive the
earnest money, less any independent consideration under Paragraph 7B(3)(a), as
liquidated damages, thereby releasing the parties from this contract; or

(2)     enforce
specific performance, or seek such other relief as may be provided by law, or
both.

Additionally, paragraph 9(A) of the contracts
provides, AIf either party fails to close by the
closing date, the non-defaulting party may exercise the remedies in Paragraph
15.@  The contracts also allow the prevailing party
in a suit brought relating to the contracts to recover reasonable attorney=s fees. 

Under each contract, the original date for
closing was July 15, 2003.  A financing
addendum to the contracts provided for an automatic fifteen-day extension of
the closing date in the event the buyers= lender had not
completed the lender=s closing requirements, such as an
appraisal, by the closing date.  On July
15, 2003, the appraisals of the five properties were not complete, and the
closing date was automatically extended under the contract for fifteen days,
until July 30, 2003. 








On July 30, 2003, the appraisals still
were incomplete.  The buyers= lender, Moody
National Bank, would not fund the buyers= loans until the
appraisals of the properties were complete. 
The closing date was extended by an oral agreement, but the parties
disagree as to the duration of the orally agreed extension.  When the properties did not close a week
later on August 6, 2003, the sellers terminated the contracts, and the parties
never closed the earnest money contracts. 
The trial court found Moody National Bank was prepared to fund the loans
by August 25, 2003, and the buyers currently have a loan commitment for the
purchase of the real properties.

The buyers filed this suit against the
sellers seeking specific performance of the contracts based on the sellers= alleged breach of
the five contracts, and asserted claims of fraud, promissory estoppel, partial
performance, declaratory judgment, waiver, and attorney=s fees against the
sellers.  The sellers filed a
counterclaim against the buyers alleging the buyers breached the earnest money
contracts by failing to timely close the contracts, and seeking recovery of the
earnest money and their attorney=s fees under the
contracts together with post-judgment interest. 


After a one-day bench trial, the trial
court ruled in favor of the buyers, awarding them specific performance of the
five earnest money contracts and $37,500.00 in attorney=s fees.  The trial court issued findings of fact and
conclusions of law, and the evidentiary support for such findings and
conclusions is at the core of this appeal. 

DISCUSSION

In their first issue, the sellers
challenge the following findings of fact by the trial court:

6.       [The sellers] never objected or
complained about any delay in obtaining the loan commitment.

7.       [The sellers] never requested that the
contract be terminated for failure to timely obtain financing and never
returned the earnest money to [the buyers].








8.       [The sellers] elected by their silence,
conduct and words to treat the contracts as continuing and [the buyers] relied
on that election to their detriment.

11.     On or before July 30, 2003, Pedro Aguiar
expressly agreed to extend the date of the closing.  [Mr. Aguiar]=s behavior after July 30, 2003 was
consistent with an extension of time for the closing.  After July 30, 2003, [Mr. Aguiar] circulated
a letter to his tenants stating that the properties were being sold.  Further appraisals of the real estate were
scheduled with the full knowledge and participation of the [the sellers] as
follows:

Date                                                   Property

July 31,
2003                                      2719
Avenue P

July 31,
2003                                      1602
Texas Avenue

August 5,
2003                                    1010
63rd Street

13.     On August 6, 2003, [the sellers] informed
[the buyers] for the first time that [the sellers] were no longer willing to
complete the sale of the property.

15.     At all relevant times, [the buyers] were
ready, willing and able to perform their obligations under the contracts
including payment of the purchase price in cash, if necessary.

16.     The [buyers] have fulfilled all of their
obligations under the earnest money contracts, and all occurrences and
conditions precedent to the [buyers=] right to have [the sellers] perform have been satisfied.

18.     Because of [the sellers=] breach of contract, [the buyers]
are entitled to recover specific performance of the contracts from [the
sellers].

19.     [The buyers] are entitled to reasonable
attorney=s fees in the amount of $37,500.00
pursuant to the contracts between [the buyers] and [the sellers].

20.     [The sellers] are liable for breach of
contract and [the buyers] are entitled to recover:

a.       specific performance to enforce all five
(5) contracts for the sale of the real estate;

b.       reasonable attorney=s fees in the amount of $37,500.00;

c.       post-judgment interest at the rate of ten
(10) percent per annum (or the highest rate allowed by law), from the date of
judgment until paid; and








d.       costs
of court.

In their second issue, the sellers
challenge the following conclusions of law:

1.       [The buyers] met all statutory and
common-law requirements for recovery of attorney=s fees.  

3.       [The sellers] waived any right to
terminate the contract  based on delays
in securing financing.     

4.       The July 30, 2003 closing date was waived
by the parties and the parties could have closed by August 25, 2003 which is a
reasonable time for performance under the circumstances.

5.       [The sellers] are liable for breach of
contract and [the buyers] are entitled to recover:

a.       specific performance to enforce all five
(5) contracts for the sale of the real estate;

b.       reasonable attorney=s fees in the amount of $37,500.00;

c.       post-judgment interest at the rate of ten
(10) percent per annum (or the highest rate allowed by law), from the date of
judgment until paid; and

d.       costs of court.

In their third and final issue, the
sellers claim they are entitled to recover on their counterclaim for earnest
money, attorney=s fee=s and
post-judgment interest.

I.        The
Trial Court=s Findings of Fact and Conclusions of Law

In issue one, the sellers argue the trial
court erred in its findings of facts because there is no evidence or factually
insufficient evidence to support findings of fact numbers 6, 7, 8, 11, 13, 15,
16, 18, 19, and 20.  Specifically, the
sellers assert the evidence conclusively established the following:  

(1)     the sellers timely objected to the delay in
financing and the buyers= delay in closing (challenging
finding of fact number 6);

(2)     the sellers informed the buyers of their
intent to terminate the contracts  based
on the buyers= failure to timely close the sales
pursuant to the contracts (challenging finding of fact number 7);








(3)     the sellers never by silence, words,
action, or inaction elected to treat the contracts as continuing (challenging
finding of fact number 8); 

(4)     the sellers agreed to extend the date for
closing the sales for only one week and no more (challenging finding of fact
number 11); 

(5)     the sellers timely notified the buyers of
their intent to terminate the contracts due to the buyers= failure to timely close the sales,
and the sellers terminated the contracts based on the buyers= failure to timely close the sales
pursuant to the agreements with the buyers (challenging finding of fact number
13);

(6)     the buyers did not fulfill or satisfy all
conditions precedent under the contract to obtaining specific performance and
did not tender performance within the time set for closing of the sales
(challenging finding of fact number 16); 

(7)     the sellers did not breach their contracts
with the buyers, thus specific performance was not available to the buyers
(challenging finding of fact number 18); 

(8)     because there was no breach of contract by
the sellers, the buyers were not entitled to recover attorney=s fees (challenging finding of fact
number 19); and 

(9)     the
sellers were not liable for breach of contract (challenging finding of fact
number 20).

In issue two, the sellers specifically contend the
trial court erred in its conclusions of law numbers 1, 3, 4, and 5 as
follows:  (1) because there was no breach
of contract by the sellers, the buyers did not establish they met all statutory
and common-law requirements for the recovery of attorney=s fees; (2) the
sellers did not waive any right to terminate the contracts based upon the
buyers= delays in
securing financing; (3) the sellers agreed to extend the closing past July 30,
2003, for one week only, until August 6, 2003, and performance by the buyers
was required within that period of time, a week, and not Aa reasonable time@ after July 30,
2003; and (4) because the sellers did not breach the earnest money contracts,
the buyers are entitled to no relief.  

 

 








A.      Standard
of Review

Findings of fact in a bench trial have the
same force and dignity as a jury=s verdict upon
jury questions.  City of Clute v. City
of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ. App.CHouston [14th
Dist.] 1977, writ ref=d n.r.e.). 
When challenged on appeal, the findings are not conclusive if there is a
complete reporter=s record, as there is here.  In re K.R.P., 80 S.W.3d 669, 673 (Tex.
App.CHouston [1st
Dist.] 2002, pet. denied).  The trial
court is the sole judge of the credibility of the witnesses and the weight to
be given their testimony.  Barrientos
v. Nava, 94 S.W.3d 270, 288 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  The trial court=s findings will
not be disturbed if there is evidence of probative force to support them.  Id. 


A trial court=s findings are
reviewable for legal and factual sufficiency of the evidence by the same
standards that are applied in reviewing evidence supporting a jury=s answer.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  If an appellant attacks
the legal sufficiency of an adverse finding on an issue on which he did not
have the burden of proof, the appellant must demonstrate on appeal there is no
evidence to support the adverse finding. 
Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341,
347 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  In reviewing a Ano evidence@ point, we
consider all the evidence in the light most favorable to the trial court=s finding,
indulging every reasonable inference in favor of the prevailing party, and
disregard all evidence and inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001); Price Pfister, Inc., 48 S.W.3d at 347.  If more than a scintilla of evidence exists
to support the finding, the no evidence challenge fails.  Formosa Plastics Corp. USA v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998).   








When an appellant attacks the factual
sufficiency of an adverse finding on an issue which he did not have the burden
of proof, the appellant must demonstrate the evidence to support the finding is
so weak that the finding is clearly wrong and manifestly unjust.  Price Pfister, Inc., 48 S.W.3d at
347.  In a factual sufficiency challenge,
all of the evidence in the record, both for and against the finding, is
reviewed.   Id.  

We review the trial court=s conclusions of
law de novo.  Smith v. Smith, 22
S.W.3d 140, 143B44 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  Under de novo
review, the reviewing court exercises its own judgment and redetermines each
legal issue.  Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1998).  We will
uphold conclusions of law on appeal if the judgment can be sustained on any
legal theory the evidence supports.  Waggoner
v. Morrow, 932 S.W.2d 627, 631 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  Incorrect
conclusions of law do not require reversal if the controlling findings of fact
support the judgment under a correct legal theory.  Id.

Here, the trial court filed twenty
findings of fact and five conclusions of law in support of its judgment.  In addition, the record contains a reporter=s record of the
proceedings.

B.      Breach
of Contract

In its findings of fact and conclusions of
law, the trial court essentially found the sellers never objected to or
complained about any delays in obtaining the loan commitment, never requested
that the contract be terminated on this basis, and elected by their silence,
conduct, and words to treat the contracts as continuing.  Based on these findings, the trial court
determined (1) the sellers waived any right to terminate the contracts based on
the buyers= delays in securing financing, and (2) the
sellers breached the contracts by terminating the contracts.








The sellers contend the trial court=s findings and
conclusions are erroneous.  The sellers= complaints focus
on what transpired on July 30, 2003 and thereafter concerning the five
contracts.  The sellers claim the
evidence shows that on July 30, 2003, Mr. Aguiar orally agreed to a one-week
extension of the contracts.  When the
contracts did not close a week later on August 6, 2003, Mr. Aguiar terminated
the contracts due to the buyers= failure to close
on or before the closing date.  The
sellers contend the buyers= failure to close
the five loans on August 6, 2003 constituted a breach of the earnest money
contracts, and the buyers= breach entitled the sellers to terminate
the earnest money contracts.  It is
undisputed the earnest money contracts failed to close on August 6 because the
buyers= lender failed to
fund the loans on that date due to incomplete appraisals. 

The essential elements of a breach of
contract claim are:  (1) the existence of
a valid contract; (2) performance or tendered performance by the plaintiff; (3)
breach of the contract by the defendant; and (4) damages sustained by the
plaintiff as a result of the breach.  Valero
Mktg. & Supply Co. v. Kalama Int=l, 51 S.W.3d 345,
351 (Tex. App.CHouston [1st Dist.] 2001, no pet.).  Specific performance of a contract to sell
real estate will not be decreed if the plaintiff seeking specific performance
has himself committed a material breach of contract.  See Scott v. Vandor, 671 S.W.2d 79, 84
(Tex. App.CHouston [1st Dist.] 1984, writ ref=d n.r.e.).  The issue of whether a party breached a
contract is a question of law.  Garza
v. Southland Corp., 836 S.W.2d 214, 219 (Tex. App.CHouston [14th
Dist.] 1992, no writ).  








Parties to a written contract may orally
agree to extend the time of performance of a contract required to be in
writing, so long as the oral agreement is made before the expiration of the
written contract.  Dracopoulas v.
Rachal, 411 S.W.2d 719, 721 (Tex. 1967). 
If time is of the essence by express stipulation in a contract, strict
performance may be waived by the party entitled to insist on it.  Carpet Servs. Inc., v. George A. Fuller
Co. of Texas, 802 S.W.2d 343, 346 (Tex. App.CDallas 1990),
aff=d, 823 S.W.2d 603 (Tex. 1992).  Such waiver may be written or oral, and it
may be shown by circumstances or course of dealing.  Id. 
Waiver is an intentional relinquishment of a known right or intentional
conduct inconsistent with claiming that right. 
Continental Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 789
(Tex. App.CHouston [14th Dist.] 2001, no pet.).  The affirmative defense of waiver can be established
by a party=s express renunciation of a known right,
or by silence or inaction for so long a period as to show an intention to yield
the known right.  Because waiver is
largely a matter of intent, for implied waiver to be found through a party=s actions, intent
clearly must be demonstrated by the surrounding facts and circumstances.  Id.

C.      The
Evidence

Keeping the above principles in mind, we
review the record to determine whether the evidence is legally and factually
sufficient to support the trial court=s findings of fact
and conclusions of law.  The following is
a summary of the relevant testimony regarding what transpired between the
parties on July 30, 2003, the end of the contractual automatic extension date,
and thereafter.  

A real estate agent, Rebecca Habeb, acted
as an intermediary for both parties under the terms of the earnest money
contracts.  According to Ms. Habeb, she called
Mr. Aguiar on July 30, 2003, the last day to close the sales under the
fifteen-day extension in the contracts, and she told Mr. Aguiar the properties
were not going to close that day.  Mr.
Aguiar told her he was worried about his tenants because the tenants were
refusing to pay rent and were moving out. 
Mr. Aguiar told her the tenants had heard the property was going to be
sold, and he had lost about ten thousand dollars.  Ms. Habeb assured Mr. Aguiar the verbal
appraisals were coming in one by one. 
She explained the lender would not fund the full loan without the
written appraisals, and the four larger properties had lengthy appraisals that
would take a couple of more weeks to finalize after the verbal appraisal was
received.  Mr. Aguiar again told her he
was worried about his tenants.  She asked
him what he wanted her to do, and he said he did not know.  She offered to write a letter to his tenants
explaining the buildings are going to be sold but the rents would not be raised
and nobody would be kicked out of their apartment to assist Mr. Aguiar in
getting his rents from the tenants.  He
agreed to have her write the letter.








Ms. Habeb also testified Mr. Aguiar orally
agreed during the July 30 phone call to extend the closing date beyond July
30.  She reminded Mr. Aguiar three more
appraisals were coming up, two the following day, July 31, and one on August
5.  Mr. Aguiar told her he knew that.  She asked him if Awe were going
forward,@ and he said
yes.   She asked him if he was sure he
was okay with this, and he said yes.  Ms.
Habeb asked Mr. Aguiar if he could hold out for one more week because that is
when the bank said it could start the closings.  Mr. Aguiar verbally agreed to a one-week
extension, but he did not agree to any time beyond a week.  Ms. Habeb testified that she did not tell him
all five properties would close within a week because only the bank knew how
long it would take to close.

A week later on August 6, 2003, the sales
neither closed nor Astarted@ to close.  That day, Mr. Aguiar called Ms. Habeb and
told her he wanted to terminate the contracts. 
He told her he had been having problems with his tenants, he was afraid
the sale was not going to go through, and the bank was taking too long.  Ms. Habeb still believed the sale was going
to go through.  When he called to
terminate, she tried to talk him out of it and told him the bank was almost
ready to close.  He told her he was
worried about his tenants, he was losing money, and he had heard Athe bank [had not]
really confirmed the sales@ and Aaround Galveston
the properties were selling for more money.@ 

On August 6, the sellers executed Areleases of
earnest money and contract@ for four of the
properties.[1]  The following day, on August 7, 2003, Ms.
Habeb faxed the four releases of earnest money and contract to the buyers.  As to the fifth property, the residential
duplex, the sellers gave the buyers notice of cancellation of that contract on
August 14, 2003.  Ms. Habeb testified the
sellers= cancellations of
the earnest money contracts were inconsistent with what Mr. Aguiar had told her
on July 30 about wanting to go through with the sale.








          Paul Segal, one of the buyers,
testified the funds were not ready for closing on July 30, 2003.  He testified no consideration was given to
Mr. Aguiar to extend the closing date, and there was no written agreement
concerning any extension.  However,
according to Mr. Segal, he and his partner, Mr. Abadee, were ready to pay cash
for the five properties on July 30 and August 5.  When asked whether he thought he had an oral
agreement with Mr. Aguiar to extend the time for closing on or about July 15
and July 30 and thereafter, Mr. Segal answered yes.  Mr. Segal did not testify as to any specifics
concerning the alleged oral agreement.

Mr. Aguiar testified he was ready to close
the contracts on July 15 and July 30, but the sales of the properties did not
close on these days.  On July 30, Ms.
Habeb asked him to give her one more week to close the contracts, and he agreed
to give her one week from July 30.  Mr.
Aguiar testified he was desperate because she had promised him the contracts
would close all along, yet the contracts still had not closed.  A week later, on August 6, the sales still
had not closed, so he decided to cancel the contracts.  Prior to August 6, Mr. Aguiar had never
refused to sell the properties to the buyers. 
He stated he never received any money or promises to extend the closing
date prescribed by the earnest money contracts, and there are no written
agreements varying the terms of the contracts.[2]

According to Mr. Aguiar, on July 30, he
only agreed to extend the closing date for one week.  Ms. Habeb told him on July 30 that one or two
properties could be closed that day, and by waiting one more week, four of the
properties would close August 6.  Ms.
Habeb told him all of the properties could be closed within a week, and she did
not tell him the properties could start closing within a week.








At trial, Steve Hughes, the real estate
appraiser who appraised the five properties, testified regarding the
appraisals, and Kent Dodge, a loan officer with Moody National Bank, testified
regarding the loan documents and the need to have the appraisals of the
properties completed before the bank could fund the loans.  Their testimony does not bear on the issue of
whether the parties agreed to extend the contract beyond August 6 or whether
the sellers waived their right to terminate the contract.  

D.      Sufficiency
of the Trial Court=s Findings and Conclusions

Utilizing the sufficiency standards set
forth above, we look first to the trial court=s findings of
fact.  Considering only the evidence and
reasonable inferences in support of the court=s findings, we
conclude the trial court=s findings of fact numbers 6, 7, 8, 16,
18, 19, and 20 are not supported by any evidence.  In addition, reviewing all of the evidence in
the record, we conclude the evidence to support these findings is so weak that
the findings are clearly wrong and manifestly unjust.  We reach these conclusions based on the
following evidence:

_        Ms.
Habeb testified she asked Mr. Aguiar on July 30, 2003 to hold out for one more
week, and he agreed to do so.

_        Ms.
Habeb testified she asked Mr. Aguiar to hold out for one more week because the
bank was supposed to start closing on the properties within a week.  

_        Mr.
Aguiar testified he agreed to a one-week extension of the closing for the
earnest money contracts, but it was his understanding that all five properties
would close within a week.  

_        Mr.
Aguiar assisted with the scheduling of the appraisals of the properties within
the one-week extension and he notified his tenants that a sale was imminent,
attempting to facilitate the scheduled closing of the five contracts by August
6, 2003.  

_        The
buyers= lender was not able to close on
August 6 and, in fact, the lender was not prepared to fund the loans until
August 25, 2003, almost three weeks later. 

_        Mr.
Aguiar informed Ms. Habeb on August 6 that he was terminating the contracts,
and he executed the releases.   

_        The
contracts provided time was of the essence.








Of utmost importance is the fact that Ms. Habeb=s and Mr. Aguiar=s testimony that
the earnest money contracts were orally extended for only one week until August
6 so that closing of the properties at some level would begin by August 6 is
not controverted.  Ms. Habeb and Mr.
Aguiar=s testimony
concerning the oral agreement to extend the closing of the contracts until
August 6, 2003 directly contradicts the trial court=s findings of fact
numbers six, seven, and eight that the sellers Anever objected or
complained about any delay in obtaining the loan commitment,@  Anever requested that
the contract be terminated for failure to timely obtain financing . . . ,@ and Aelected by their
silence, conduct and words to treat the contracts as continuing . . . .@  (Emphasis added).  The evidence does not support these three
findings.  In fact, the record shows Mr.
Aguiar expressed his concerns to Ms. Habeb regarding the buyers= delay in closing
the loans on July 30, 2003 and again on August 6, 2003.  On August 6, Mr. Aguiar told Ms. Habeb he was
terminating the contracts, and he executed the releases of earnest money and
contracts for four of the properties. 
Ms. Habeb then faxed the executed releases to the buyers the following
day, August 7, and the release for the fifth property was executed August 14,
2003.[3]  None of the properties closed or began to
close on August 6, and it was not until the end of August that the appraisals
were complete and the bank was ready to close the five properties.

The evidence conclusively established the
sellers orally agreed to a one-week extension of the contract, from July 30
through August 6, and, on August 6, the buyers did not close or begin to
close the earnest money contracts.  Thus,
there is no evidence to support the trial court=s findings of fact
numbers 16, 18, 19, and 20 that the buyers fulfilled all of their obligations
under the earnest money contracts and all occurrences and conditions precedent
to have the sellers perform have been satisfied; the sellers= breach of
contract entitles the buyers to specific performance of the contracts; and the
buyers are entitled to reasonable attorney=s fees.  








Having determined the evidence is legally
and factually insufficient to support the trial court=s findings of fact
numbers 6, 7, 8, 16, 18, 19, and 20, we next review the trial court=s conclusions of
law.  Conclusions of law will be upheld
on appeal if the judgment can be sustained on any legal theory supported by the
evidence.  See Westech Eng=g, Inc. v.
Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.CAustin 1992, no
writ).  The trial court concluded in
conclusions of law one, three, four, and five that the sellers met all
statutory and common-law requirements for recovery of attorney=s fees; Awaived any right
to terminate the contract based on delays in securing financing;@ waived the July
30, 2003 closing date and could have closed by August 25, 2003, Aa reasonable time
for performance under the circumstances;@ and are liable to
the sellers for breach of contract and attorney=s fees.[4]  Based on the trial court=s legally and
factually insufficient findings discussed above, we conclude these conclusions
of law are not supported by any evidence, and we hold these conclusions of law
are erroneous as a matter of law.  The
evidence is insufficient to support the trial court=s conclusions that
the sellers waived their right to terminate the contracts and that the sellers
breached the contracts.








Based on the foregoing, the buyers were
not entitled to prevail on their breach of contract claim against the sellers
or to recover attorney=s fees. 

We sustain the sellers= first and second
issues.

II.       The
Sellers= Counterclaim

In their third issue, the sellers argue
that because the buyers failed to close the five earnest money contracts by
paying the purchase price to them by the extended August 6, 2003 closing date,
the sellers were entitled to declare the contracts terminated and retain the
earnest money pursuant to paragraph 15(A)(1) of the contracts.  In addition, the sellers assert they are
entitled to recover their attorney=s fees, pursuant
to paragraph sixteen of the contracts, in the amounts of $7,500.00 for trial
and $12,000.00 for the appeal.

A.      Earnest
Money

Parties to a contract may stipulate the
amount of damages to be recovered in the event of a breach.  See Birdwell v. Farrell, 746 S.W.2d
338, 341 (Tex. App.CAustin 1988, no writ).  Such an agreement binds the parties and
furnishes the measure of damages.  See
id. at 341B42.

Paragraph nine of the earnest money
contracts, entitled AClosing,@ provides if
either the buyer or seller fails to close by the closing date, the
non-defaulting party may exercise the remedies in paragraph fifteen.  Paragraph 15(A)(1) of the contracts sets
forth the remedies the seller may pursue in the event of the buyer=s default:

15.     DEFAULT

A.      If Buyer fails to comply with this
contract, Buyer is in default and Seller may:

(1)     terminate this contract and receive the
earnest money as liquidated damages, thereby releasing the parties from this
contract; or               

(2)     enforce
specific performance, or seek other relief as may be provided by law, or both.








(emphasis added). 
The trial court found a total of $12,500.00 in earnest money was
deposited by the buyers in the escrow accounts for the five properties.[5]  

The uncontradicted evidence shows the
buyers failed to close within the time agreed upon for closing.  The buyers= failure to close
by the closing date constituted a breach of the earnest money contracts.  As the non-defaulting party, the sellers were
entitled under the contracts to exercise the remedies provided by paragraphs nine
and fifteen.  In accordance with these
provisions, the sellers terminated the contracts and seek recovery of the
earnest money as liquidated damages.  

We conclude the sellers established they
are entitled to recover $12,500.00 in earnest money from the buyers, and the
trial court erred in failing to award the sellers this amount.  See Harrison v. Gemdrill Int=l Inc., 981 S.W.2d 714,
718 (Tex. App.CHouston [1st Dist.] 1998, pet. denied)
(reversing and rendering judgment on defendant=s counterclaim for
breach of contract for lost wages). 
Having decided the sellers were entitled to recover the earnest money
under the contract, we next determine whether the sellers adequately proved
their right to recover attorney=s fees under the
contract.

B.      Attorney=s Fees

The sellers claim the trial court should
have awarded them $19,500.00 in attorney=s fees  under the contract.  We agree.








Paragraph sixteen of the contracts governs
the sellers= recovery of attorney=s fees, providing,
AIf . . . Seller .
. . is a prevailing party in any legal proceeding brought under or with
relation to this contract or this transaction, such party is entitled to
recover from the non-prevailing parties all costs of such proceeding and
reasonable attorney=s fees. 
This Paragraph 16 survives termination of this contract.@  

The earnest money contracts provide clear
contractual justification for an award of attorney=s fees to the
prevailing party in this action.  See
Emery Air Freight Corp. v. General Transport Sys., Inc., 933 S.W.2d 312,
315B16 (Tex. App.CHouston [14th Dist.]
1996, no writ) (holding parties= agreement
provided clear contractual justification for the award of costs and expenses,
including attorney=s fees, to the prevailing party).  For the trial court to award an amount of
attorney=s fees as a matter
of law, Athe evidence from
an interested witness must not be contradicted by any other witness or
attendant circumstances and the same must be clear, direct and positive, and
free from contradiction, inaccuracies and circumstances tending to case [sic]
suspicion thereon.@  Ragsdale
v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex.1990); see
Harrison, 981 S.W.2d at 719.  The
trial court, Aas a trier of fact, may award attorneys= fees as a matter
of law in such circumstances, especially when the opposing party has the means
and opportunity of disproving the testimony or evidence and fails to do so.@  Ragsdale, 801 S.W.2d at 882.  

As the prevailing party, the sellers are
entitled to recover reasonable attorney=s fees under
paragraph sixteen of the contracts.  The
sellers= attorney
testified the sum of $7,500.00 was a reasonable and necessary attorney=s fee for trial of
the case, and in the event of a successful appeal, the sum of $12,000.00 was a
reasonable and necessary attorney=s fee in
connection with the appeal.  The buyers
did not object to the amount of the requested attorney=s fees, contest
the reasonableness of the fees, or offer any evidence to contradict such an
amount.   Accordingly, attorney=s fees in the
amount of $19,500.00 are warranted.

We sustain the sellers= third issue.








CONCLUSION

Having sustained the sellers= first, second,
and third issues, we reverse the judgment of the trial court.  We remand the case to the trial court for
entry of a new judgment consistent with this opinion, including a finding of
the total amount of post-judgment interest calculated pursuant to applicable
law. 

 

 

 

/s/     John S. Anderson

Justice

 

 

Judgment rendered and Majority and Dissenting Opinions
filed May 24, 2005.

Panel consists of Justices Yates, Anderson, and
Hudson. (Yates, J., concurs in the result only without a separate opinion.  Hudson, J., dissents and files a dissenting
opinion.)

 

 

 

 

 











[1]  A Arelease of earnest money and contract@ is a termination of the earnest money contract and
release of earnest money from the title company back to either the buyer or the
seller.  The buyers did not sign the
releases.





[2]  The issue of
whether there was consideration for the oral extension by the parties of the
closing date in the contracts was not raised in the trial court or on
appeal.  An agreement for extension of
time for performance of a contract should be supported by separate and distinct
consideration.  See Walden v.
Affiliated Computer Servs. Inc., 97 S.W.3d 303, 314 (Tex. App.CHouston [14th Dist.] 2003, pet. denied); Stevenson
v. Adams, 640 S.W.2d 681, 684 (Tex. App.CHouston
[14th Dist.] 1982, writ ref=d n.r.e.).  





[3]  The buyers
have not asserted on appeal that this release and the property it covered
executed over one week after the four other releases should be treated any
differently than, or had any effect on, the other properties. 





[4]  Focusing on
Mr. Aguiar=s conduct in preparing the estoppel certificates on
July 31 and allowing the appraisals of the properties to be conducted on July
31 and August 5, the dissent would defer to the trial court=s finding of fact number eight that the sellers Aelected by their silence, conduct and words to treat
the contracts as continuing and [the buyers] relied on that election to their
detriment@ and would affirm the trial court=s judgment based on theories of waiver and
estoppel.  

 

Mr. Aguiar was bound under the terms of the earnest
money contracts to prepare the estoppel certificates for the properties and to
facilitate the appraisals of the properties; otherwise, the sellers would be in
default and liable to the buyers for breach. 
Thus, Mr. Aguiar=s conduct in fulfilling these two contractual duties
on July 31 and August 5, during the orally agreed to one-week extension for
closing, is not evidence of waiver by the sellers of their right to terminate
the contracts and does not estop the sellers from terminating the contracts
when the sales did not close at any level on August 6, the agreed upon extended
closing deadline.  The record simply does
not support the trial court=s finding that the sellers elected by their silence,
conduct, and words to treat the contracts as continuing, thereby allowing the
buyers to rely on that election to their detriment. 

 

Focusing on principles of equity, the
dissent states Mr. Aguiar Aindicated by his conduct that he would permit a
reasonable time to obtain the written appraisals.@  (Emphasis
added).  The evidence shows Mr. Aguiar
orally agreed to a one-week  extension
of the contracts, not to a reasonable time, and his conduct was
consistent with the orally-agreed-to one-week extension.  The dissent implies the parties= orally-agreed-to one-week-extension somehow
transformed into a Areasonable@
extension of time for the sellers to close the contracts; this simply is not
born out by the record.  Equitable
principles of waiver and estoppel simply do no come into play under the facts
of this case, and the evidence is legally and factually insufficient to support
a finding by the trial court of waiver or estoppel in favor of the buyers.





[5]  In finding of
fact number four, the trial court found the total amount of earnest money
deposited in the escrow account was $12,500.00. 
The sellers do not specifically challenge this finding of fact on
appeal, but in their brief, the sellers assert the amount of earnest money
deposited was $13,500.00 and seek to recover this amount under their
counterclaim.  During trial, the sellers
introduced into evidence (1) a copy of the title company=s escrow receipt showing $13,500.00 was deposited into
the escrow account, and (2) a copy of a check written by Paul Segal to the
title company for $13,500.00.  However,
according to the earnest money contracts, the sum total of the earnest money
required to be deposited by the sellers in accordance with the five contracts
was $12,500.00.  Even if we liberally construe
the sellers= arguments as challenging the legal and factual
sufficiency of the trial court=s finding of fact number four, because there is record
evidence to support the$12,500.00 amount found by the trial court, the finding
is legally and factually sufficient, and we are bound by this finding.  See McGalliard v. Kuhlmann, 722 S.W.2d
694, 696 (Tex. 1986) (holding unchallenged findings of fact are binding on an
appellate court unless the contrary is established as a matter of law or there
is no evidence to support the finding).