# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-20289

———————

THE LUBRIZOL CORPORATION,

                                        Plaintiff-Appellee,

v.

THE GRAY INSURANCE COMPANY,

                                        Defendant-Appellant.

———————

Appeal from the United States District Court
for the Southern District of Texas
No. 4:07-CV-3301

———————

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

   In a dispute between Lubrizol Corporation ("Lubrizol") and Gray Insurance Company ("Gray") over interpretation of a contract, the district court found the contractual language unambiguous and granted summary judgment for Lubrizol.  We affirm.

———————

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Lubrizol contracted with Pat Tank, Inc. ("Pat Tank"), for Pat Tank's services in repairing a storage tank. Among the documents signed to consummate the arrangement is an "Access Agreement," which contains two clauses that are the subject of this dispute. The first is an indemnity clause, capped at $2 million, in which Pat Tank promises to indemnify Lubrizol for any injuries Pat Tank intentionally or negligently causes its employees. The second is a separate insurance clause that obligates Pat Tank to purchase a comprehensive general liability ("CGL") insurance policy and add Lubrizol as an additional insured.

Two of Pat Tank's employees were injured on the job and sued Lubrizol. That suit, Ashworth v. Lubrizol, No. 1:06-CV-00494-MAC, is proceeding in the Eastern District of Texas and is not currently before us. The issue here is which party will pay for the expense of the Ashworth litigation. Because the Ashworth plaintiffs do not allege that Pat Tank caused their injuries, Lubrizol cannot use the Access Agreement's indemnity clause to force Pat Tank to pay. Instead, Lubrizol invokes the insurance clause and claims that Pat Tank's CGL provider should cover the Ashworth expenses.

To fulfill its obligations under the Access Agreement, Pat Tank purchased a CGL policy from Gray. The policy can extend to cover "additional insured" parties, but only where required by a written agreement. Gray does not believe that the Access Agreement requires it to cover Lubrizol in the Ashworth case and so refuses to pay for the litigation. Lubrizol responded by suing.

The two parties disagree on the interpretation of the insurance clause. Gray reads the insurance requirement as covering only Pat Tank's indemnity obligations, so it will not pay for the Ashworth litigation, because Pat Tank does

not have any indemnity obligations there. Lubrizol reads the insurance clause as requiring all-inclusive coverage, not limited to indemnification.

In its order granting summary judgment, the district court (accurately) criticized the Access Agreement for being "a model of bureaucratic opacity" but noted that "[b]ad form . . . is not necessarily ambiguity . . . ." After parsing the relevant language, it determined that Lubrizol's interpretation of the contract is unambiguously the correct one. Accordingly, it ordered Gray to pay Lubrizol's legal expenses in the Ashworth litigation. Gray now appeals.

## II.

"A grant of summary judgment is reviewed de novo. The interpretation of a contract is a question of law, subject to de novo review." Quorum Health Res. v. Maverick County Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002) (internal citations omitted). The parties agree that Texas substantive law controls. See Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc., 334 F.3d 423, 427 (5th Cir. 2003).

We first consider whether the district court correctly found that the contract language unambiguously supports Lubrizol's interpretation. "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. . . . If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (internal citations omitted).

The relevant language of the insurance clause states:

> INSURANCE. [Pat Tank] shall maintain insurance policies . . . in amounts of at least $1,000,000 . . . for each of the following insurance coverages . . . :
>
> a) Worker's Compensation (statutory)
> b) Employer's Liability
> c) Comprehensive General Liability . . .
> d) Automobile Liability
> e) Include Lubrizol as additional insured on c) and d) above
>         . . .
> [Pat Tank], . . . to the extent necessary to provide coverage under [its] insurance for the liabilities assumed by [it] under the indemnity provisions of this Agreement, shall designate Lubrizol as an additional insured on Comprehensive Contractor's General Liability Insurance . . . .

Standing alone, the first half of the clause, which lists the policies Pat Tank is required to purchase, is unambiguous: Pat Tank must obtain several different types of insurance in the amount of $1 million and must add Lubrizol as an additional insured on the CGL and automobile liability coverage. The final paragraph introduces the potential ambiguity. Lubrizol interprets it as adding to Pat Tank's insurance obligations; Gray interprets it as clarifying the insurance requirement already described in line (e).

Under Lubrizol's reading, line (e) stands alone and obligates Pat Tank to acquire at least $1 million of CGL insurance and add Lubrizol as an additional insured. The final paragraph imposes the further requirement that if, to have insurance coverage for its indemnity obligation, Pat Tank chooses to purchase more than the minimum $1 million of CGL insurance, it must then add Lubrizol as an additional insured on the extra CGL insurance to the extent of Pat Tank's indemnity obligations (which are capped at $2 million). If the contract is read that way, Lubrizol would be an additional insured for all purposes up to $1 mil-

4

lion of coverage and an additional insured, for only indemnity purposes, from $1 million to $2 million dollars. Accordingly, Gray would be required to insure Lubrizol for up to $1 million in the Ashworth litigation.

Under Gray's reading, line (e) still obligates Pat Tank to acquire at least $1 million of CGL insurance, but the final paragraph clarifies that Lubrizol needs to be added as an additional insured only "to the extent necessary to provide coverage . . . under the indemnity provision . . . ." If the contract is read that way, Lubrizol is an additional insured for only indemnity purposes up to a maximum of $2 million, and Gray would not have to pay for any expenses in the Ashworth litigation.

We disagree with the two reasons the district court gave for rejecting Gray's interpretation. First, the court stated that Gray's interpretation "would simply erase line (c)." That is incorrect. If line (c) were struck from the contract, Pat Tank would no longer be obligated to obtain any CGL insurance. It would still need to include Lubrizol as an additional insured on whatever policy it purchased, but it could choose to buy less than $1 million of coverage.

Second, the district court reasoned that Gray's interpretation creates an internal inconsistency in the contract:

> Line (e) requires Tank to name Lubrizol as an additional insured not only for (c) general liability but also for (d) automobile liability. Gray's argument reads the single short line (e) to oblige Tank to name Lubrizol as an insured for automotive liability without restriction, but imports a different paragraph to limit the obligation to name it as an insured for general liability. Line (e) is not internally inconsistent.

The alleged inconsistency, however, is mere awkwardness and, standing alone,

does not compel the conclusion that Gray's interpretation is unreasonable.[1]

We nonetheless agree that the contract is unambiguous. Gray's interpretation is in error, because it reads the final paragraph as referencing or clarifying line (e). The last paragraph does not contain such language; its only cross-reference is to the indemnity provision; it is otherwise written as a stand-alone obligation, completely divorced from the prior discussion of CGL insurance.[2]

Further, "[i]n construing a contract, we strive to give meaning to each provision." Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996). Under Gray's interpretation, the reference to CGL insurance in line (e) would serve no independent function and could be completely struck without changing the contract's meaning.[3] Only under Lubrizol's interpretation do both line (e) and the final paragraph serve a role.[4] Accordingly, we agree with the

---

[1] The inconsistency would not be troublesome if the final paragraph were explicitly written to modify line (e), reading, for example, "Under line (e) above, Pat Tank need only add Lubrizol as an additional insured on the CGL insurance to the extent necessary to provide coverage under the indemnity provisions of this contract."

[2] The language in the insurance clause addressing proof-of-insurance is a useful comparison. The first sentence requires Pat Tank to "furnish to Lubrizol certificates confirming" that it has purchased the listed insurance policies. The penultimate paragraph elaborates on that requirement, stating that "[t]he certificates furnished to Lubrizol must set forth the amount of coverage" and other details of the policy. The use of the definite article "the" and the passive voice "furnished" make plain that the certificates being discussed are the ones the contract has already obligated Pat Tank to provide. There are no similar linguistic cues in the paragraph addressing CGL insurance.

[3] Line (e) would then read, "Include Lubrizol as additional insured on (d) above."

[4] The district court appears implicitly to endorse an argument to the contrary: "Gray says that it makes no sense [to] create a general insurance requirement with line (e), and then separately describe what would be a lesser included coverage obligation. It may be right."

That argument is incorrect, because the coverage obligation created by the final para-
(continued...)

6

district courtSSalbeit for different reasons[5]SSthat the contract is unambiguous.

### III.

Gray argues that Texas law forecloses Lubrizol's interpretation. It cites various cases that establish a two-factor test for interpreting "additional insured" provisions, see, e.g., Emery Air Freight Corp. v. Gen. Transp. Sys., Inc., 933 S.W.2d 312 (Tex. App.SSHouston [14th Dist.] 1996, no pet.), and contends that Lubrizol's interpretation should be rejected as a matter of law. Reliance on those precedents, however, is misplaced.

The intersection of indemnity and insurance provisions was addressed in Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co., 490 S.W.2d 818 (Tex. 1973). There, the issue was whether an indemnity provision required a contractor to indemnify even the owner's negligent acts. The court held that a provision requiring the contractor to obtain "Liability Insurance for the protection of the Owner" "should not be considered as any evidence of intent to broaden the contractual indemnity obligation." Id. at 821, 823. Importantly, the holding is that a broadly worded insurance provision could not be used as evidence that an indemnity provision covered the owner's own negligence:

---

[4] (...continued)
graph extends beyond the obligation created by line (e). Line (e) creates a general insurance requirement only up to $1 million; the final paragraph creates an indemnity-only requirement for coverage exceeding $1 million (up to a maximum of $2 million). Thus, the obligation created by the final paragraph is not a "lesser included" obligation of the one created by line (e).

[5] "It is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 338 n.8 (5th Cir. 2008) (citation, brackets, ellipses, and internal quotation marks omitted) (quoted in United States v. Dunigan, No. 07-10922, 2007 U.S. App. LEXIS 1057, at *14 n.12 (5th Cir. Jan. 20, 2009)), cert. denied, 129 S. Ct. 570 (2008).

[Fireman's Fund] held that [the Owner] was not entitled to indemnification because the contract did not specify that the indemnity agreement extended to [the Owner's] negligence. However, it was never contended . . . that [the Owner] was an additional insured under [the contractor]'s liability policy and was therefore entitled to coverage on that basis, a fact that distinguishes Fireman's Fund from this case.

Evanston Ins. Co. v. ATOFINA Petrochem., Inc., 256 S.W.3d 660, 669 (Tex. 2008) (footnote omitted, emphasis added).

The court also distinguished Fireman's Fund in Getty Oil Co. v. Ins. Co. of N. Am., 845 S.W.2d 794, 804-05 (Tex. 1992). The contractual language at issue was similar to the language in Fireman's Fund; it said that "[a]ll insurance coverages carried by Seller, whether or not required hereby, shall extend to and protect Purchaser . . . ." Id. at 797. Unlike the owner in Fireman's Fund, however, the owner in Getty argued that it was covered under the insurance provision. The parties in Getty, like those in the present dispute, disagreed about whether the insurance covered all claims or was restricted to the contractor's indemnity. The court concluded that the former interpretation was correct, noting that the contract was different from the one in Fireman's Fund in that (1) the indemnity section contained its own insurance provision, and (2) the general "additional insured" provision specified that it applied "whether or not required [by the other provisions of the contract]." Id. at 804 (brackets in original).

In Emery Air Freight Corp. v. Gen. Transp. Sys., Inc., 933 S.W.2d 312 (Tex. App.SSHouston [14th Dist.] 1996, no pet.), the court attempted to reduce the contractual features noted in Getty to a binding two-factor test. The contract said that the "Contractor shall obtain and maintain its own expense insurance in such forms and minimum amounts as set forth below naming [the Owner] as an

8

additional insured. . . ." Id. at 315. The court held that coverage extended only as far as the indemnity provision, because "[u]nlike Getty Oil, the indemnity clause has no internal insurance provision, and the insurance provision does not require coverage 'whether or not required' by other clauses."[6] Id.

The Emery test, however, was rejected in Evanston. There, the court found a direct contractual provision that "ATOFINA shall be named as additional insured in each of [contractor's] policies" sufficient to create a general additional insured obligation (rather than one for indemnity only). Id. at 670 (internal quotation marks omitted). To reach that conclusion, the court looked only to the contractual language and did not apply the two-factor Emery test. The court also explicitly "disapprove[d] the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability;" it cited Emery as a disapproved decision. Id. at 670 & n.50.

Gray relies on Emery and similar decisions as justification for rejecting Lubrizol's interpretation. As Gray correctly notes, both of the Emery factors weigh against Lubrizol's reading: The agreement's indemnity section does not

---

[6] Opinions following Emery took a similarly mechanical approach. For example, in ALCOA v. Hydrochem Indus. Servs., Inc., 2005 WL 608232 (Tex. App.SSCorpus Christi 2005, pet. denied), the court considered a contractual obligation that stated, "Buyer . . . shall be named as additional insured in all of the foregoing insurance policies . . . ." The entirety of the court's analysis is as follows:

> This provision does not specify that it applies "whether or not required" by other clauses in the contract. Further, the indemnity agreement does not contain a separate, internal additional-insured provision. We conclude the absence of these elements shows the ALCOA-Hydrochem additional-insured provision was not intended to stand alone as a distinct obligation, but was intended only to assure the performance of the indemnification agreement.

Id. at *11.

contain any internal references to insurance, and the additional insured provision does not contain the magic words "whether or not required by other provisions of the contract."

Gray tries to avoid the impact of Evanston by arguing that it differs with Emery only "to the extent that Emery had indicated that an additional insured provision must expressly reference negligence before it can be invoked by an additional insured for coverage for its own negligence." Gray claims that "Emery's guidance as to differentiation between a stand alone additional insured provision and an additional insured provision designed to support an indemnity agreement remain [sic] undisturbed Texas law."

That is a misreading of Emery. Significantly, the insurance provision in Evanston is nearly indistinguishable from the one in Emery. In both cases, the contractual language obligated the owner merely to add the contractor as an additional insured, yet Evanston reached the opposite conclusion on interpretation and explicitly disapproved of Emery.

Thus, although the need for the insurance clause to be distinct from the indemnity agreement remains "undisturbed Texas law," Emery's mechanical two-factor test is no longer viable. Instead, a direct statement that the owner should be an additional insured under the contractor's insurance policies suffices, which is precisely what line (e) provides.

We therefore AFFIRM.

10