**Affirmed and Opinion filed February 14, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00477-CV

### HARMOHINDER S. BHATIA, Appellant

### V.

### WOODLANDS NORTH HOUSTON HEART CENTER, PLLC, NORTH HOUSTON HEART CENTER, PLLC, NORTHWEST HOUSTON CARDIOVASCULAR IMAGING CENTER II, LTD., NORTHWEST HOUSTON CARDIOVASCULAR IMAGING ASSOCIATES, P.A., BACL INVESTMENTS, LLC, VINCENT AQUINO, M.D., GARY COLEMAN, M.D., BRUCE LACHTERMAN, M.D., AND CHRISTOPHER LAVERGNE, M.D., Appellees

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-09704**

## O P I N I O N

This lawsuit concerns the breakup of a medical practice group. Although the group involved several related business entities, appellant Harmohinder S. Bhatia

sued his former partners regarding his interest in just one of the entities, Northwest Houston Cardiovascular Imaging Center II, Ltd. (Imaging Center). At the conclusion of trial, a jury found that no party was liable for any damages to any other party. The trial court entered a take-nothing judgment on Bhatia's claims and awarded attorney's fees to appellees Vincent Aquino, M.D., Gary Coleman, M.D., Bruce Lachterman, M.D., and Christopher Laverge, M.D.[1]

Bhatia raises six issues on appeal, alleging: (1) the trial court erred in failing to award Bhatia the fair value of his interest in the Imaging Center, (2) the evidence was legally and factually insufficient to support the jury's "no" answer to Question 1 in the charge asking whether the appellees failed to comply with the partnership agreement, (3) the evidence was legally and factually insufficient to support the jury's finding of zero damages, (4) the trial court erred in admitting appellees' expert's valuation testimony, (5) the trial court erred in admitting certain evidence regarding Bhatia's conduct and income, and (6) appellees were not entitled to attorney's fees as "prevailing parties" under the partnership agreement. We affirm.

## I. Background

Bhatia opened a sole-proprietorship cardiology practice in 1978. In 1985, he hired Aquino as an employee and, three years later, the two doctors formed a partnership. Between 1988 and 2003, the other three appellees, Drs. Coleman,

---

[1] Appellees Aquino, Coleman, Lachterman, and LaVergne are appellant Bhatia's former partners in the Imaging Center. Bhatia also named as defendants each of the entities that made up the medical practice group, the Imaging Center, North Houston Heart Center, PLLC, Northwest Houston Cardiovascular Imaging Associates, P.A., and BACL Investments, LLC, as well as a new business entity created by the physician-appellees, Woodlands North Houston Heart Center, PLLC. These entities are described in more detail below. No issues concerning the participation or liability of any of these entities is expressly raised on appeal. Accordingly, the term "appellees" will be used in this opinion to reference only Bhatia's former physician-partners.

Lachterman, and LaVergne, each joined the partnership. Bhatia and Aquino also formed a separate partnership for the purpose of performing nuclear stress testing for their patients. Over the ensuing years, the ownership of this testing enterprise was restructured to add the remaining appellees as partners. By 2003, Bhatia and the appellees began having business disputes.

Appellees made plans to begin a new practice in a different building, Lantern Bend, and Bhatia planned to practice in the current building, Peakwood. As of that time, Bhatia owned an interest in the following entities:

(1) **North Houston Heart Center, PLLC (NHHC)**—the clinical practice at Peakwood.

(2) **Northwest Houston Cardiovascular Imaging Center II, Ltd. (Imaging Center)**—a provider of diagnostic testing to clients of NHHC (Imaging GP as general partner and 80 percent owner; Bhatia and each of the appellees owning minor limited partnership interests[2]).

(3) **Northwest Houston Cardiovascular Imaging Associates, PA (Imaging GP)**—the general partner of the Imaging Center.

(4) **BACL Investments, LLC**—the holding company for equipment used in the medical practice.

A partnership meeting for NHHC was noticed for February 17, 2003. On that day, Bhatia and appellees met, along with their lawyers, and voted unanimously to dissolve "the organization" as of September 1, 2003.[3] The Imaging Center was not expressly mentioned in the meeting notice or in the call for a vote on dissolution. Appellee Aquino testified, however, that business for all of the entities was customarily handled together and was addressed during

---

[2] The minor limited partnership interests apparently originated when an outside management company was removed as a limited partner in the Imaging Center. In essence, its limited partnership interest was reallocated to the partners in Imaging GP.

[3] The September 1, 2003 dissolution date could have been changed if other arrangements were agreed on prior to that date. Bhatia does not argue that any such agreements were made.

3

meetings called for NHHC. This testimony was echoed by that of appellees' business structures expert, Edgar Marston, who indicated in his testimony that the partners treated the various entities as a "unitary bucket" so that the vote to dissolve the organization on February 17, 2003 was effective to dissolve all of the entities.

At a meeting on September 15, 2003, Bhatia and at least some of the appellees discussed, among other things, the allocation of equipment that had been used by the Imaging Center. Several accounting experts, including John Wade, an auditor appointed by the court on Bhatia's motion, testified at trial that Bhatia received at least his fair share of these assets. John Henderson, the accountant who purportedly oversaw the windup of business and disbursement of assets for the medical practice group, specifically testified that Bhatia received cash distributions, equipment, and files related to his patients. Liabilities similarly were disposed of, although Henderson and Wade both testified appellees satisfied the final $180,000 in liabilities after Bhatia failed to complete his contribution.

After September 30, 2003, appellees moved into Lantern Bend and opened Woodlands North Houston Heart Center, PLLC. There, they continued to treat patients much as they had at Peakwood with some of the same employees and using some of the same equipment. Meanwhile, Bhatia continued to practice at Peakwood with some of the same equipment and some of the same employees.

Bhatia subsequently sued appellees for, among other things, breach of the Imaging Center partnership agreement, breach of fiduciary duty, conversion, and misappropriation of partnership assets. Appellees counterclaimed for breach of fiduciary duty, conversion, and misappropriation.[4] Bhatia's primary position at

---

[4] Bhatia additionally raised claims for suit on a sworn account, an accounting, declaratory judgment, statutory fraud, common law fraud, liability under the Texas Theft Liability Act, and

4

trial and on appeal is that the Imaging Center never properly and officially dissolved, so when appellees continued performing diagnostic testing for patients at a new location with much of the same equipment and many of the same employees, this was in effect a continuation of the Imaging Center. Thus, Bhatia contends that he was entitled to the value of his interest as a withdrawing partner in an ongoing and quite profitable partnership rather than merely the value of his interest in a dissolved or defunct partnership.

The jury answered "no" to Question 1 in the charge asking whether the appellees failed to comply with the agreement. The jury also answered "no" to Question 6 asking whether the appellees misappropriated or converted partnership property, and to Question 8 asking whether Bhatia converted or misappropriated partnership property. The jury further found that appellees and Bhatia each violated their fiduciary duty, but it declined to award damages to anyone. The trial court entered judgment in accordance with the jury's verdict and awarded attorney's fees to appellees as "prevailing parties," as authorized under the Imaging Center partnership agreement. The parties stipulated before trial to the amount of reasonable attorney's fees incurred in the litigation and necessary in the event of an appeal.[5]

_____

unjust enrichment. At the close of Bhatia's case-in-chief, the trial court granted directed verdict on the suit on a sworn account, the request for an accounting, the statutory fraud claim, and the Theft Liability Act claim. During the charge conference at the conclusion of trial, the court rejected Bhatia's submission on common law fraud. No issue related to the trial court's consideration of any of these causes of action are raised in this appeal. Appellees also brought other claims against Bhatia, including for unjust enrichment and under the Theft Liability Act. No issue on appeal relates to these causes of action either.

[5] In their brief, appellees argue that Bhatia failed to timely file a notice of appeal under Texas Rule of Appellate Procedure 26.1 or a motion to extend time to file such notice under Rule 26.3. Tex. R. App. P. 26.1, 26.3. This court, however, has already accepted Bhatia's notice of appeal and denied appellees' motion to dismiss raising the same issues. We will not revisit our prior decisions here.

5

## II. Legal and Factual Sufficiency

Bhatia's first three issues raise legal or factual sufficiency challenges to the trial court's judgment or the jury's findings. In his first issue, Bhatia contends that, as a matter of law, the trial court should have awarded him the fair market value of his interest in the Imaging Center as of September 30, 2003. In his second issue, he asserts that the jury's failure to find that appellees breached the partnership agreement is not supported by legally or factually sufficient evidence. And, in his third issue, Bhatia contends that the evidence was legally and factually insufficient to support the jury's finding of "zero" damages for appellees' breach of their partnership duties to Bhatia.

### A. Standards of Review

In considering a legal sufficiency challenge, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *Port of Houston Auth. of Harris Cnty. v. Zachry Constr. Corp.,* 377 S.W.3d 841, 859 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). To challenge the factual sufficiency of the jury's findings successfully, Bhatia must establish that the evidence was so weak or the findings were so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

### B. Issue One: Going Concern as a Matter of Law

In his first issue, Bhatia contends that as a matter of law, the trial court should have awarded him the fair market value of his interest in the Imaging

6

Center as of September 30, 2003. More specifically, Bhatia asserts that, after that date, he "no longer participated or retained his interest" in the Imaging Center and that this "disassociation" from the partnership was equivalent to either a withdrawal from the partnership under the Texas Revised Limited Partnership Act (TRLPA), an expulsion or transfer of interest under the Texas Revised Partnership Act (TRPA), or a repurchase of his interest under the applicable provisions of the agreement. Tex. Rev. Civ. Stat. art. 6132a–1, §§ 1.01–13.09 (expired Jan. 1, 2010) (TRLPA); *id*. arts. 6132b–2.02(a) to 2.03(a) (expired Jan. 1, 2010) (TRPA).

Bhatia does not explain how his alleged rights under the TRLPA or the TRPA relate to any of the causes of action he submitted to the trial court below or to the jury or to the evidence introduced at trial. As discussed above, the only claims submitted to the jury were for breach of contract, breach of fiduciary duty, conversion, and misappropriation. Although other claims were included in his live petition, neither the TRLPA nor the TRPA was cited, referenced, or alluded to in that petition. We cannot reverse the trial court's judgment based on a theory of recovery not pleaded and proven below. *See* Tex. R. Civ. P. 301 (judgment must conform to pleadings and proof); *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003) (same); *see also Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (per curiam) (holding judgment was not proper where no pleadings or evidence supported the theory of recovery on which the judgment was based); *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979) (explaining the history, purpose, and application of pleading requirements).

Further, Bhatia's arguments presume that the Imaging Center continued as a going concern after September 30, 2003. If the Imaging Center did not continue to operate after that date, Bhatia's argument that he was a withdrawing or expelled partner or that his interest had been transferred or repurchased because he no

7

longer participated is without merit. The evidence at trial fails to conclusively demonstrate that the Imaging Center continued as a going concern post-September 30, 2003.

Aquino and others testified that, well before September 30, 2003, appellees made arrangements to form a new business entity and move to a different location, where they would continue to offer similar diagnostic services as had the Imaging Center. Aquino further explained that Bhatia was well aware of these preparations. Indeed, Bhatia made similar arrangements and formed a new business entity (The Heart Center of H.S. Bhatia, M.D.) for the purpose of providing services similar to those of the Imaging Center.[6] The evidence therefore indicates no partner intended for the Imaging Center to continue in operation.[7]

Additionally, after September 30, 2003, appellees began performing nuclear testing services at Lantern Bend as owners in their new business entity, which did not include Bhatia or Imaging GP as partners or owners. Appellees used some of the same equipment and some of the same employees as they had at Peakwood but did not continue to conduct business as the Imaging Center. Meanwhile, Bhatia, as planned, stayed at Peakwood and continued to provide diagnostic testing for patients using some of the same equipment and employing some of the same employees as had been previously employed by the Imaging Center, but he did not continue to conduct business as the Imaging Center.

In short, Bhatia failed to conclusively prove that the Imaging Center continued in operation after September 30, 2003. Bhatia offers no argument in his appellant's brief as to why the business form of the new entities should be

_____

[6] There was conflicting testimony as to the exact name of Bhatia's new business but not as to the fact that he formed a new business.

[7] The question of whether the Imaging Center was formally dissolved is discussed below in the analysis of issue two.

8

disregarded or treated as a continuation of the Imaging Center. He also does not point to any place in his pleadings or proof where he set forth or established any theory for piercing the corporate veil. *See Mapco Inc.*, 817 S.W.2d at 688 (explaining that judgment could not be based on alter ego, piercing the corporate veil, or agency theory without pleadings to support these theories). Because Bhatia has not conclusively established that the Imaging Center was a going concern, his argument that he was entitled to damages under the TRLPA, TRPA, or the repurchase provisions of the contract are without merit. Consequently, he cannot demonstrate that the trial court should have awarded him the value of his interest in a going concern as a matter of law. "Without liability, there can be no damage award . . . ." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 898 (5th Cir. 1998). We overrule Bhatia's first issue.

## C. Issue Two: Breach of Contract

In issue two, Bhatia asserts that the jury's "no" answer to Question 1, asking whether the appellees breached the partnership agreement, is not supported by legally or factually sufficient evidence. To successfully challenge the legal and factual sufficiency of the evidence on an issue on which he had the burden of proof, Bhatia must show respectively that the evidence conclusively establishes the opposite of the jury's finding or that the jury's finding was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Bhatia's primary argument under this issue is that appellees' "dissolution scheme" did not properly dissolve the Imaging Center in accordance with the partnership agreement. Among the triggering events listed in the agreement as permitting dissolution is "written consent of the General Partner and the Limited Partners who hold two-thirds (2/3) of the Partnership Interests then held by all the

9

Limited Partners." Bhatia insists that the partners never formally consented to dissolution of the Imaging Center.

Appellees contend that the dissolution vote at the February 17, 2003 partners meeting fulfilled the requirement of written consent because the meeting was recorded on audiotape and later transcribed and made a part of the formal minutes for that meeting.[8] Bhatia points out that the notice for the February 17 meeting mentioned only NHHC and not the Imaging Center. As appellees urge, however, if Bhatia participated in the meeting and did not object to consideration of the dissolution of the Imaging Center, he would be prevented by Texas law from subsequently denying that it was properly raised and considered. *See* Tex. Bus. Org. Code § 6.052.

Bhatia further notes that the call for a vote on dissolution at the meeting did not expressly mention the Imaging Center. A tape recording of the meeting reveals that the partners unanimously voted to dissolve "the organization," not one or more particular legal entities. Moreover, Aquino testified that business for all of the entities was customarily handled together and was addressed during meetings called for NHHC. Appellees' business structures expert, Marston, supported this position in his testimony, explaining that the partners treated the various entities as a "unitary bucket" such that the vote to dissolve the organization on February 17, 2003, was effective to dissolve all of the entities. Aquino further testified that it was understood among the partners at the meeting that the vote on dissolution of "the organization" included all of the related entities, including the Imaging Center. This evidence supports the conclusion that the partners voted to dissolve

---

[8] Bhatia does not specifically argue that, assuming a dissolution vote occurred at that meeting, the *written* requirement was unmet by the transcription and entry into the minutes. To the extent he intended to raise such an issue, it is improperly briefed. *See* Tex. R. App. P. 38.1(i).

the Imaging Center. In other words, Bhatia has failed to conclusively establish that appellees breached the Imaging Center partnership agreement or that the jury's failure to find a breach is against the great weight and preponderance of the evidence.[9] We consequently overrule Bhatia's second issue.

## D. Issue Three: Zero Damages[10]

In his third issue, Bhatia contends that the evidence was legally and factually insufficient to support the jury's finding of "zero" damages for appellees' breach of their partnership duties to Bhatia. Bhatia claims that there was no evidence in the record on which the jury could assess zero damages and that the only credible evidence valued his interest in the Imaging Center at $7,290,000. To be

[9] Bhatia also complains in his second issue regarding the procedures employed to allocate the assets of the Imaging Center post-dissolution. He is not specific, however, as to how these procedures caused him any damage. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984) (explaining that party seeking affirmative relief has burden of demonstrating entitlement to actual damages). As will be discussed in more detail in the next section of this opinion, several of the accounting experts who testified at trial stated Bhatia received at least his correct share of the assets. Bhatia also participated in a meeting where the allocation of these assets was debated.

Bhatia's argument seems to be that, because the Imaging Center continued as a going concern, the profits appellees would earn in their new partnership should be considered profits of the Imaging Center. He does not explain, however, why he would be entitled to such relief as a result of appellees' breach of the Imaging Center partnership agreement. We decline to make Bhatia's argument for him. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Brown v. Green*, 302 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (declining to expand on party's conclusory arguments).

Bhatia relies heavily on our sister court's opinion in *Atterbury v. Brison*, 871 S.W.2d 824 (Tex. App.—Texarkana 1994, writ denied), but that case does not support his position. In *Atterbury*, the court held that a former partner who brought suit for an accounting and breach of contract after the partnership was dissolved was entitled to the fair market value of his share of the partnership assets at the time of dissolution. *Id*. at 828. There is no suggestion in *Atterbury* that the plaintiff-partner was entitled to future profits of an ongoing concern, even though one of the other partners apparently continued in the same business at a different location. *Id*. at 827-28.

[10] The jury handwrote "Zero $ awarded" below the two damages questions it answered with "0."

11

successful, Bhatia must conclusively demonstrate his entitlement to damages or that the jury's finding of zero damages was against the great weight and preponderance of the evidence. *See Dow Chem.*, 46 S.W.3d at 241.

Bhatia's valuation expert at trial, James Jordan, testified that, if the Imaging Center continued in operation after September 30, 2003, Bhatia would be entitled to the "fair market value" of his interest in the continuing enterprise or, according to Jordan, $7.29 million.[11]  Appellee's valuation expert Gregory Morris testified that, if the Imaging Center did not continue to conduct business but instead dissolved or became defunct, Bhatia would be entitled only to his percentage interest in the value of the partnership's assets.

Bhatia argues that Morris utilized an improper method to determine the value of Bhatia's interest when he calculated book value instead of fair market value.  Book value is an improper method for determining the value of partnership assets because such values are mere arbitrary entries in a ledger. *See Cheek v. Humphreys*, 800 S.W.2d 596, 598 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *see generally* Black's Law Dictionary 75 (defining "book value" as "[t]he value at which an asset is carried on a balance sheet.").  In his testimony, however, Morris did not use the term "book value" in describing his analysis.  Instead, Morris explained, "[under] what I call the cost or balance sheet approach, [I] look at the assets that we have left on the balance sheet, estimate their value, and subtract the liabilities to get what's left over."  Thus, it is clear that Morris did not simply look at the asset values listed on the Imaging Center's books, but undertook to derive a market value for those assets.  Indeed, Morris testified that the "fair

---

[11] Fair market value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction."  Black's Law Dictionary 743 (2d Pocket ed. 2001).  It is the proper method for valuing a partner's partnership interest under several circumstances. *See, e.g.,* Tex. Bus. Orgs. Code § 152.602.

12

market value" of Bhatia's interests in the partnership's assets was $51,000 and that Bhatia received assets valued in excess of that amount.

In all, four certified public accountants testified that if the Imaging Center were not a continuing concern, then Bhatia received his fair share of the partnerships' assets, including cash distributions, equipment, and files related to his patients. The CPAs included: Morris, appellees' valuation expert; John Henderson, the accountant who purportedly oversaw the windup of business and disbursement of assets for the medical practice group; David Rook, appellees' accounting expert who reviewed Henderson's work; and John Wade, the auditor appointed by the court on Bhatia's motion.

As discussed, there was evidence to support the conclusion that the Imaging Center was not a going concern after September 30, 2003. There also was evidence that if the Imaging Center were not a going concern, Bhatia would be entitled only to his share of the partnership assets and that he received at least his share of those assets. Consequently, Bhatia has failed to conclusively establish his entitlement to damages or that the jury's finding of zero damages was against the great weight and preponderance of the evidence. We overrule Bhatia's third issue.

### III. Evidentiary Issues

In his fourth and fifth issues, Bhatia challenges the admission of, respectively, expert testimony on valuation and testimony regarding Bhatia's conduct and income. We will discuss each issue in turn.

### A. Expert Testimony

In issue four, Bhatia asserts that the trial court abused its discretion in permitting appellees' valuation expert Greg Morris to testify regarding the "book value" of Bhatia's interest when such valuation methodology was improper under

13

the circumstances of this case. A trial court has broad discretion in deciding whether to admit or exclude expert testimony. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719–20 (Tex. 1998); *Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We will reverse the trial court's ruling only if the court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006).

To be admissible, expert testimony must be both relevant and reliable. *Gammill*, 972 S.W.2d at 727. Expert testimony is relevant when it assists the fact finder in determining an issue or in understanding other evidence. *See* Tex. R. Evid. 702; *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010). The determination on reliability must focus on the expert's methodology, foundational data, and whether too great an analytical gap exists between the data and methodology, on the one hand, and the expert's opinions, on the other. *See Gammill*, 972 S.W.2d at 728.

Bhatia specifically alleges that Morris's testimony was both unreliable and irrelevant because it was based on an improper valuation methodology ("book value") and an incorrect factual assumption that the partnership had dissolved. As discussed above, however, Morris did not actually testify that he used a "book value" methodology of the type we disapproved in *Cheek*, 800 S.W.2d at 598. Instead, Morris explained that he derived a value for Bhatia's interest in the partnership's assets by looking at what assets were on the Imaging Center's balance sheets, estimating their value, and subtracting liabilities. Indeed, Morris specifically testified to the "fair market value" of Bhatia's interest. As also discussed above, there was evidence supporting the conclusion that the Imaging Center had been dissolved, and whether it was properly dissolved or not, it was not

14

a continuing enterprise. There was certainly no evidence to conclusively prove the opposite. Thus, the premises of Bhatia's challenge to Morris's testimony are without merit. Accordingly, we overrule Bhatia's fourth issue.

## B. Evidence Regarding Bhatia's Conduct and Income

In his fifth issue, Bhatia argues that the trial court abused its discretion in admitting evidence concerning Bhatia's conduct before, and his income after, September 30, 2003. A trial court generally has broad discretion regarding the admission of evidence at trial. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). To obtain reversal of a judgment based upon the improper admission of evidence, an appellant must show that the trial court's error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Tex. R. App. P. 44.1(a); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Error in the admission of evidence is generally not grounds for reversal unless the appellant can demonstrate that the judgment turns on the challenged evidence. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

### 1. Conduct Testimony

Bhatia contends that the trial court erred in admitting evidence of his conduct before September 30, 2003 because the alleged conduct in question was unrelated to any claims in the lawsuit and thus was inadmissible character evidence under Texas Rule of Evidence 404. In support of this argument, Bhatia mentions the entirety of four witnesses' testimony. He provides neither a general cite to that testimony nor a pinpoint cite to specific statements contained within that testimony. Additionally, he does not provide any specifics regarding what was said or cite to where he preserved error by objecting to the testimony about which he now complains. In short, Bhatia has not provided a basis on which we can

15

assess his generalized complaint. *See* Tex. R. App. P. 38.1(i); *see also In re P.E.W.*, 105 S.W.3d 771, 775 (Tex. App.—Amarillo 2003, no pet.) (finding appellant failed to properly brief complaint regarding admission of evidence where she only generally stated the nature of the allegedly inadmissible testimony and did not provide particulars or record citation). Consequently, we find no merit in his argument regarding the testimony related to his conduct.

## 2. Evidence of Income

Bhatia also complains about the admission of testimony regarding his income immediately after appellees left Peakwood. Specifically, he quotes the testimony of Greg Morris, appellees' valuation expert, who stated that Bhatia "made more than a million dollars a year" following his separation from appellees. Bhatia contends that such evidence was irrelevant and highly prejudicial, leading the jury to mistakenly conclude that he had suffered no damages from the breakup of the medical practice group.[12]

Bhatia's counsel, however, made no objection to the portion of Morris's testimony that Bhatia now complains about on appeal; thus, this issue was not preserved for appellate review. *See* Tex. R. App. P. 33.1. Moreover, the same information was introduced, without objection, through other sources, including Bhatia himself, who testified about his income during cross-examination prior to Morris's testimony. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (holding any error in admission of evidence "is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence

---

[12] There was evidence in the record that at least initially after formation, Bhatia earned a substantially higher income from his new business than appellee Aquino did as a partner in appellees' new business. Evidence indicated Bhatia reported adjusted gross income of $1.38 million in 2003, $1.24 million in 2004, and $1.12 million in 2005. Aquino reported income of $572,278 for 2003. Aquino attributed the drop in his own income to the start-up costs associated with appellees' new business.

16

to be introduced without objection"). Accordingly, we overrule Bhatia's fifth issue.

## IV. Attorney's Fees

Lastly, in issue six, Bhatia contends that the trial court erred in awarding attorney's fees to appellees as "parties prevailing" under the partnership agreement. In its final judgment, the court stated that "[t]he Executed Jury Verdict demonstrates [appellees] are the 'part[ies] prevailing,' as that expression is used within Section 16.3 of the Agreement." Under the American Rule, a litigant may not recover attorney's fees except as provided under a statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). Section 16.3 of the partnership agreement provides:

> If any litigation is initiated by any Partner against another Partner or the Partnership relating to this Agreement or the subject matter hereof, the party prevailing in such litigation shall be entitled to recover, in addition to all damages allowed by law and other relief, all court costs and reasonable attorneys' fees incurred in connection therewith.

Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Unless defined in the contract itself, terms therein are given their plain, ordinary, and generally accepted meanings. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The agreement here does not define "party prevailing"; thus, we assume the parties intended the phrase's ordinary meaning to apply. *See Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Fitzgerald v. Schroeder Ventures II, Inc.*, 345 S.W.3d 624, 629-30 (Tex. App.—San Antonio

2011, no pet.).[13]

We have previously interpreted "prevailing party" in similar contract provisions to mean the party that prevails on the "main action" or the "main issue" in the litigation. *See, e.g., Parkway Dental Assocs. v. Ho & Huang Props., L.P.*, No. 14-10-01239-CV, 2012 WL 6624925, at *12 (Tex. App.—Houston [14th Dist.] Dec. 20, 2012, no pet. h.); *Chevron Phillips Chem. Co., v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 72 (Tex. App.—Houston [14th Dist.] 2011, pet. filed); *Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.*, 933 S.W.2d 312, 315–16 (Tex. App.—Houston [14th Dist.] 1996, no pet.), *disapproved of on other grounds by Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008). For a defendant, this would mean successfully defending on the main action. *E.g., Parkway Dental Assocs.*, 2012 WL 6624925, at *12; *Chevron Phillips Chem.*, 346 S.W.3d at 72; *Emery Air Freight*, 933 S.W.2d at 315–16. Typically, this would mean obtaining a take-nothing judgment on the main issue or issues in the case. *See Old HH, Ltd. v. Henderson*, No. 03-10-00129-CV, 2011 WL 6118570, at *4 (Tex. App.—Austin December 09, 2011, no pet.) (mem. op.); *Fitzgerald*, 345 S.W.3d at 630; *Silver Lion, Inc. v. Dolphin Street, Inc.*, No. 01–07–00370–CV, 2010 WL 2025749, at *18 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.).[14]

---

[13] Black's Law Dictionary defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 516. In defining the term "prevail," the American Heritage Dictionary uses synonyms such as "triumph" and "win out." American Heritage Dictionary 982 (2d College ed. 1991).

[14] Because the contract language is mandatory, we would typically review the trial court's decision on whether to award fees under a de novo standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998); *Fitzgerald*, 345 S.W.3d at 627. However, it is unclear in the existing caselaw whether the trial court's determination of whether a particular party was a prevailing party should be reviewed under a de novo or abuse of discretion standard. In its two recent cases discussing prevailing parties in this context, the Texas Supreme Court did not state a standard of review, and its analysis does not clearly employ one standard or the other. *Epps v.*

Appellees here focus on the fact that the jury found in their favor on the only issue concerning the partnership agreement that was submitted in the jury charge. However, Section 16.3 in the partnership agreement was not limited to litigation regarding a breach of the agreement itself; Section 16.3 included "litigation . . . relating to . . . the subject matter" of the agreement. *Cf. Trinh v. Lang Van Bui*, No. 14-11-00442-CV, 2012 WL 5378112, at *12 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet. h.) (mem. op.) (holding attorney's fees provision in contract was broad enough to encompass tort claims); *Fitzgerald*, 345 S.W.3d at 630-31 (holding attorney's fees provision applied beyond breach-of-contract context). The subject matter of the agreement was the partnership.

As discussed above, each side in this litigation raised numerous claims, each of which is to some degree related to the partnership. Bhatia sued for breach of contract, breach of fiduciary duty, conversion, misappropriation, suit on a sworn account, an accounting, declaratory judgment, statutory fraud, common law fraud, liability under the Texas Theft Liability Act, and unjust enrichment. Appellees sued for breach of fiduciary duty, conversion, misappropriation, unjust enrichment, and liability under the Theft Liability Act. Appellees did not "win out" on all of the claims; therefore, we must identify the "main issues" to determine whether they

*Fowler*, 351 S.W.3d 862 (Tex. 2011); *Intercont'l Group P'ship*, 295 S.W.3d 650. We have found no court of appeals opinion squarely addressing this issue. Courts have stated inconsistent standards. *Compare Johnson v. Smith*, No. 07-10-00017-CV, 2012 WL 140654, at *2 (Tex. App.—Amarillo Jan. 18, 2012, no pet.) ("Whether a party is entitled to recover attorney's fees is a question of law for the trial court which we review *de novo*."), *with Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 668 (Tex. App.—Corpus Christi) ("Both parties agree that an award of attorneys' fees is reviewed under an abuse of discretion standard."), *rev'd*, 295 S.W.3d 650 (Tex. 2009). We note that in a very similar context, the allocation of court costs to the "successful party" under Texas Rule of Civil Procedure 131, the trial court has discretion in determining which party should receive costs, even though the rule is mandatory. *See* Tex. R. Civ. P. 131; *Sterling Bank v. Willard M, L.L.C.*, 221 S.W.3d 121, 125 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In this case, however, our holding would be the same regardless of which standard of review we employed. Accordingly, we need not determine the definitive standard of review.

19

were the prevailing party at trial.

Not all of the claims were equal in terms of emphasis at trial or in terms of the relief sought. Some were essentially abandoned, and others were defeated in motions practice and were not submitted to the jury or raised in this appeal. The clear focus at trial, as it has been in the appeal, was on Bhatia's claims for breach of contract and breach of fiduciary duty. These intermingled claims were the bases for the vast majority of the testimony and were the primary bases for Bhatia's claim that he was entitled to $7.29 million in actual damages.[15] *Cf. Chevron Phillips Chem.*, 346 S.W.3d at 72 (indicating party prevailed on main issue by preventing opponent from recovering $4 million in breach-of-contract damages). None of the other claims raised by Bhatia, or any of the claims raised by appellees, were of similar consequence or emphasis.[16]

Who won on these two claims is clear. The jury failed to find that appellees breached the agreement, and even though the jury found appellees breached their fiduciary duty, it also found that such breach did not cause any actual damages to Bhatia.[17] The purpose of Bhatia's lawsuit was to recover damages. He wholly failed to do so. The purpose of appellees' defense to these main issues was to avoid paying any damages. They were successful and received a take-nothing

___

[15] Bhatia's breach of contract and breach of fiduciary duty claims also dominated each side's closing argument.

[16] Although appellees also raised a breach of fiduciary duty claim, their claim was far lesser in scope and sought-after recovery than was Bhatia's. It was not simply the other side of the same coin. Primarily under their cause of action, appellees contended Bhatia had kept certain collections that were received after the parties went their separate ways but were for services rendered prior to separation.

[17] The elements of a breach of fiduciary duty cause of action require a showing of "injury" to the claimant, not necessarily actual damages. *See, e.g., Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The only injury alleged here by Bhatia was actual damages. Appellees prevailed on this cause of action when the jury determined that Bhatia was not entitled to any damages.

judgment in their favor.  *See Old HH, Ltd.*, 2011 WL 6118570, at \*4 (holding party prevailed when it received take-nothing judgment in its favor); *Fitzgerald*, 345 S.W.3d at 630 (same); *Silver Lion, Inc.*, 2010 WL 2025749, at \*18 (same). Appellees were the prevailing parties in the main issues in this litigation, and the trial court did not err in awarding them attorney's fees.  We overrule Bhatia's sixth issue.

## V.  Conclusion

Because we find no merit in any of Bhatia's issues, we affirm the trial court's judgment.

/s/      Martha Hill Jamison
         Justice

Panel consists of Justices Boyce, Christopher, and Jamison.

21