**Affirmed and Memorandum Opinion filed April 7, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00063-CV

---

## FIRST TRANSIT, INC. AND HOLLIS SILMON, Appellants

### V.

## HECTOR ALFARO, DAN TOLTECATL, INDIVIDUALLY AND A/N/F OF D.I.T AND A/N/F D.T., AND DAVID CANTU, Appellees

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2010-70196**

---

## M E M O R A N D U M   O P I N I O N

This case arises from a multiple-vehicle accident involving a Metro Park'N'Ride bus. Appellants First Transit, Inc. and Hollis Silmon present four issues on appeal. In their first two issues, appellants contend the evidence is legally and factually insufficient to support the jury's finding that (1) Silmon was involved in the accident and (2) the accident occurred in the manner alleged. In their third issue, appellants argue that the accident report was inadmissible under Rule

803(8)(B) and (C) because the sources of information relied on by the investigating officer indicate a lack of trustworthiness. Appellants also contend that the trial court erred in admitting the investigating officer's testimony on the bus driver's identity and the reliability of Metro's GPS system. In their fourth issue, appellants argue that, under rule 613 of the Texas Rules of Evidence, the trial court erred when it precluded them from impeaching a witness with prior inconsistent statements. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On May 17, 2010, in the eastbound lanes of U.S. Highway 290, a Metro Park'N'Ride Bus operated under contract by appellant First Transit collided with a Chevrolet Trailblazer driven by Dan Toltecatl, causing it to overturn. As a result of this initial collision, Toltecatl's vehicle collided with appellee Hector Alfaro's Jeep Cherokee, causing it to impact the cement wall separating the main lanes from the high-occupancy-vehicle (HOV) lane. Immediately after the accident, the bus pulled over near the Mangum Street exit, but it did not stay at the scene.

Alfaro sued appellants and Houston Metro Transit Authority for negligence. Toltecatl intervened individually and on behalf of his minor children, D.I.T. and D.T., both of whom were in the Trailblazer at the time of the accident. Appellee David Cantu intervened as the owner of the Trailblazer. The trial court granted Metro's plea to the jurisdiction and dismissed Metro from the case. The case was tried to a jury.

Donald Heffley witnessed the accident and testified at the trial. He first encountered the Park'N'Ride bus at the intersection of Antoine Drive and 34th Street. He was driving behind the bus after it turned right onto the Highway 290 feeder and merged onto the Highway 290 heading east towards downtown

Houston. He observed the bus change lanes in front of a Chevrolet Trailblazer and saw the bus collide with the Trailblazer. Heffley then pulled his car over and called 911. Heffley recalled that the last two digits of the bus's four-digit identification number were "2" and "1."

The trial court admitted a Dispatcher Worksheet showing that Silmon was driving Park'N'Ride Bus 4821 on the day of the accident. Silmon confirmed at trial that he was driving Bus 4821 on the day of the accident. He acknowledged that the accident occurred on his bus route but denied being involved in the accident. Silmon testified that he was driving west in the Highway 290 HOV lane at the time of the accident.

A document known as a "paddle" was admitted at trial. The paddle is a step-by-step list of instructions for the bus driver. The paddle shows that, before starting the route at Greenway Plaza, Bus 4821's driver had to (1) leave the garage via Central Crest Street; (2) turn right onto Antoine Drive; (3) turn right onto 34th Street; and (4) turn right onto U.S. Highway 290 heading east.

The trial court admitted data from Metro's Integrated Vehicle Operations Management System (IVOMS)[1] showing Bus 4821's location at the time of the accident. The IVOMS data indicated that Bus 4821 was traveling west on Highway 290 at the time of the accident.

The parties disputed the accuracy of the IVOMS location data. A work order indicated that Bus 4821's onboard computer, known as the "Copilot," had to be replaced after the accident. In a box titled "Repair Comments" beside the word "Complaint," the work order reads: "CK IVOMS." The cause of the problem is

---

[1] The IVOMS is part of an onboard computer system that tracks a bus's activity. For example, when a bus driver stops to pick up a passenger, the computer tracks the opening and closing of the doors and records the location of that particular stop.

noted as a "SHORTED COPILOT," and the correction is noted as "REPL COPILOT." The IVOMS is connected to a bus's Copilot computer system. Appellees presented the work order to show that the IVOMS data for Bus 4821 is unreliable. In response, appellants presented the deposition testimony of Ronald Dupree. Dupree was a Bus Controller at the time of the accident. Dupree testified that the IVOMS was functioning properly at the time of the accident. Roblelean Marie Turner, an analyst for Metro's Customer Care Department, testified that she has observed instances when the IVOMS was off by as much as thirty minutes. She also testified that such large discrepancies were rare.

Metro Police Officers Carreon and Bogus investigated the accident. Carreon arrived on the scene at approximately 4:28 p.m., nearly an hour after Heffley called 911. Carreon interviewed Heffley and the Houston police officers who were securing the scene. According to Carreon, Bogus was responsible for investigating the partial bus number provided by Heffley. Bogus determined that Bus 4821 was involved in the accident.

After completing his investigation, Carreon prepared an accident report, which was admitted by the trial court. The admitted accident report contains Carreon's factual findings. Carreon's narrative opinion of what happened was redacted from the admitted report. The report indicates that Silmon was involved in the collision. Carreon testified at trial. He testified that Silmon was driving the bus that was involved in the accident. He also provided his general opinion on the accuracy and reliability of Metro's GPS system.

The jury found that Silmon's negligence proximately caused the accident. The jury found that Silmon was 100% responsible for the accident. First Transit stipulated to the applicability of respondeat superior. Appellants timely appealed.

**DISCUSSION**

**Legal and Factual Sufficiency of the Evidence**

In their first and second issues, appellants contend the evidence is legally and factually insufficient to support the jury's finding that (1) Silmon was involved in the accident and (2) the accident occurred in the manner alleged. Because appellants did not bear the burden of proof at trial we will address their legal sufficiency point as a "no evidence" issue and their factual sufficiency complaint as an "insufficient evidence" issue. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 183–84 (Tex. App.—Fort Worth 1995, no writ).

*Legal Sufficiency*

A legal sufficiency or "no evidence" challenge will be sustained when the record discloses one of the following situations: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence conclusively establishes the opposite of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the judgment, crediting evidence that a reasonable fact finder could have considered favorable and disregarding unfavorable evidence unless the reasonable fact finder could not. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). We indulge every reasonable inference that supports the trial court's findings. *Id.* We cannot substitute our opinion on witness credibility for that of the jury. *City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 (Tex. 2005). Nor can we disregard conclusive evidence that is contrary to a verdict. *Id.* at 817. A legal-sufficiency challenge fails if more than a scintilla of evidence supports the factual finding. *Waste Mgmt.*, 434

S.W.3d at 156.

Circumstantial evidence can be used to establish any material fact as long as it rises above mere suspicion. *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The circumstances relied upon to establish an ultimate fact must have probative force to constitute a basis for legal inference. *Convalescent Servs., Inc. v. Schultz*, 921 S.W.2d 731, 734 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The inference must be reasonably and logically drawn from the evidence. *Id.* If the circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, then neither fact can be inferred. *Id.*

The record contains more than a scintilla of evidence that Hollis Silmon was driving the Park'N'Ride bus that caused the traffic accident. Heffley testified that he followed a Metro Park'N'Ride bus from the intersection of Antoine Road and 34th Street to eastbound Highway 290. He saw the bus enter the traffic lane occupied by Toltecatl. He saw the bus collide with Toltecatl's vehicle, causing it to lose control and turn on its side. Heffley recalled that the last two digits of the bus's four-digit identification number were "2" and "1." The documentary evidence indicates that only one Park'N'Ride bus bearing the number "21" was operating in the vicinity on that day. The bus was numbered 4821 and was being driven by Silmon. According to the route paddle for that day, Bus 4821 would have driven past the scene of the accident. Additionally, the streets listed on the route paddle—Antoine Dr., 34th St., and Highway 290 east—correspond with the streets identified by Heffley during his testimony. The jury reasonably could have inferred from this evidence that Silmon's negligent driving caused the traffic accident.

Appellants contend, however, that evidence in this case conclusively establishes the opposite of a vital fact. They argue that the IVOMS location data showed that Silmon and his bus were not present at the time of the accident. Therefore, Heffley could not have seen Silmon's bus at the time of the accident.

Evidence is conclusive only if reasonable people could not differ in their conclusions. *Wilson*, 168 S.W.3d at 816. In *Wilson*, the Texas Supreme Court made clear that courts cannot disregard "undisputed contrary evidence" that conclusively establishes the opposite of a vital fact. *See id.* at 814–15. The court focused on undisputed evidence because "[i]t is the province of the jury to resolve conflicts in the evidence." *Id.* at 820.

The issue here is whether the IVOMS location data is undisputed. The answer is no. Appellees presented documentary and testimonial evidence disputing appellants' theory that Silmon was driving outbound on Highway 290 at the time of the accident. Appellees also presented evidence that the onboard computer recording Bus 4821's location had to be replaced shortly after the accident. The parties disputed both the accuracy of the IVOMS data and Silmon's location at the time of the accident. It was up to the jury to resolve these conflicts. Therefore, the IVOMS location data did not conclusively establish that the bus driven by Silmon could not have caused the accident.

The evidence is legally sufficient to support the jury's finding on liability.

### *Factual Sufficiency*

A factual sufficiency or "insufficient evidence" challenge will be sustained if evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Gooch*, 902 S.W.2d at 184. In conducting a factual sufficiency review, we must consider all of the evidence in the

7

record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Because "[t]he factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony[,]" *Washington DC Party Shuttle v. IGuide Tours*, 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), we cannot substitute our own judgment for that of the factfinder, even if we would reach a different answer on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to reverse its judgment. *Id.*

The evidence of Bus 4821 and Silmon's location at the time of the accident was conflicting. Appellants presented the IVOMS location data showing that, at the time of the accident, Silmon was driving Bus 4821 west in the Highway 290 HOV lane. Ronald Dupree testified that the IVOMS was working properly on the day of the accident. And Silmon testified that he was driving west in the Highway 290 HOV lane at the time of the accident.

On the other hand, appellees presented an eyewitness who described the accident and identified the last two digits of the bus number—"2" and "1." Documentary evidence showed that Bus 4821 was the only Park'N'Ride bus operating in the vicinity of the accident. The evidence also showed that Silmon was driving Bus 4821 on the day of the accident. Finally, Appellees presented evidence disputing the accuracy of the IVOMS location data.

The resolution of the conflicting evidence turned on witness credibility and the weight given to the evidence. It was within the jury's purview to resolve these conflicts. The jury resolved the conflicting evidence by finding that Silmon's negligence proximately caused the occurrence in question. After reviewing all of the evidence, we cannot say the evidence supporting the jury's finding is so weak

or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered.

The evidence is legally and factually sufficient to support the trial court's findings. We overrule appellant's first two issues.

## Admissibility of Officer Carreon's Report and Testimony

Appellants' third issue challenges the admissibility of Carreon's report and his opinion testimony. Appellants argue the trial court abused its discretion when it admitted Carreon's accident report because the sources he relied on were untrustworthy. Appellants next contend the trial court erred in admitting Officer Carreon's opinion on Silmon's involvement in the accident and the reliability of Metro's IVOMS and GPS systems. Appellants argue that because Carreon did not personally contact Metro to determine whether Silmon was operating the complained-of bus and did not have a description of the bus's driver, he could not opine on the issue of Silmon's involvement in the accident. Appellants further complain that Carreon was not qualified to testify as an expert about the reliability or functionality of Metro's IVOMS or GPS systems. Appellants note that Carreon's testimony conflicted with other testimony indicating the IVOMS and GPS were functioning properly on the day of the accident and were accurate. In response, appellees generally contend appellants did not preserve error. In the alternative, they argue that any error committed by the trial court was harmless.

Assuming, without deciding, that appellants preserved error, we first consider whether the trial court erred in admitting Carreon's accident report. We then determine whether the trial court erred in admitting Carreon's testimony.

9

## *Standard of Review*

We review the trial court's ruling on the admission of evidence under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A court abuses its discretion when it acts without regard to any guiding rules or principles. *Ortega v. Cach, LLC*, 396 S.W.3d 622, 628 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We must uphold the trial court's evidentiary ruling if any legitimate basis for the ruling exists. *Id.*

## *Officer Carreon's Report*

Appellants acknowledge that police reports are generally admissible under the public-records exception to the hearsay rule. *See* Tex. R. Evid. 803(8)(B), (C)[2]; *see, e.g.*, *Corrales v. Dep't of Family & Protective Servs.*, 155 S.W.3d 478, 486 (Tex. App.—El Paso 2004, no pet.). Appellants argue, however, that Carreon's report does not meet the trustworthiness requirement set forth by the exception. *See* Tex. R. Evid. 803(8) (providing hearsay exception for reports "unless the sources of information or other circumstances indicate a lack of trustworthiness"). In attacking the trustworthiness of the report, appellants have not attacked the methodology used in preparing the report. Instead, appellants contend the sources of information relied on by Carreon in compiling his report indicate a lack of trustworthiness.

Rule 803(8) creates a presumption of admissibility. *1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg. Capital*, 192 S.W.3d 20, 28 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The party opposing the admission of a report under rule 803(8) has the burden to show the report's untrustworthiness. *Id.*

---

[2] The restyled language in the Texas Rules of Evidence is effective as of April 1, 2015. We refer in this opinion to the language of the Texas Rules of Evidence in effect at the time of trial.

"Untrustworthy" means not worthy of confidence, unreliable. *Webster's Third New Int'l Dictionary* 2457, 2514 (1993). Appellants do not point to, nor have we found, any evidence in the record suggesting Heffley or any other source relied on by Carreon was untrustworthy. *See, e.g.*, *Corrales*, 155 S.W.3d at 487 (appellants failed to meet burden when they did not indicate which statements were untrustworthy); *Tex. Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 803–04 (Tex. App.—Corpus Christi 2002, pet. denied) (admission of peace officer's affidavit was not abuse of discretion when nothing indicated that sources of information lacked trustworthiness). The record appears to indicate that the sources were trustworthy. Carreon testified that he relied mainly on statements from (1) the Houston Police Department officers at the scene of the accident, (2) Donald Heffley, and (3) fellow Metro Police Officer Bogus. None of the sources identified by Carreon are parties to the lawsuit. None of the sources have an interest, pecuniary or otherwise, in the outcome of the lawsuit. And the description of the accident Heffley provided to Carreon is consistent with Heffley's description of the accident at trial.

Furthermore, Rule 803(8)(C) permits the admission of factual findings resulting from an investigation made pursuant to authority granted by law. Tex. R. Evid. 803(8)(C). The rule also allows the admission of conclusions based on the factual investigation. *McRae v. Echols*, 8 S.W.3d 797, 800 (Tex. App.—Waco 2000, pet. denied) (discussing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162 (1988)).[3] Carreon's accident report contains his factual findings and conclusions based on those findings. The accident report also provides a space for the

---

[3] Texas rule 803(8), as effective at the time of trial, was substantively identical to the Federal Rule of Evidence 803(8) in effect at the time of trial. *See* Fed. R. Evid. 803(8) (2012), *available at* http://www.gpo.gov/fdsys/pkg/USCODE-2012-title28/pdf/USCODE-2012-title28-app-federalru-dup2-rule803.pdf; *Tex. Dep't of Public Safety v. Caruana*, 363 S.W.3d 558, 566 (Tex. 2012); *see also* Brown & Rondon, *Texas Rules of Evidence Handbook*, 873 (2014).

investigator to write a "narrative opinion of what happened"—i.e., his conclusion regarding causation. Carreon's narrative and conclusion were redacted from the admitted report. *Compare Griffin v. Carson*, 01-08-00340-CV, 2009 WL 1493467, at *3–*4 (Tex. App.—Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.) (admission of accident report was not abuse of discretion when investigating officer's conclusions were redacted from the report), *with Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 892 n.2 (Tex. App.—Texarkana 2004, pet. denied) (because police officer was not a qualified expert, conclusions rendered within the officer's accident report were inadmissible under rule 803(8)).

The admitted report contained only Carreon's factual findings and conclusions drawn from those findings. Appellants did not establish that Carreon's sources were untrustworthy. Appellants have not met their burden to overcome the presumption of admissibility. We cannot say the trial court abused its discretion in admitting Carreon's accident report.

### *Officer Carreon's Testimony*

Appellants challenge the admission of Carreon's testimony on essentially two grounds. They first complain that Carreon's testimony regarding Silmon's involvement was not based on personal knowledge but rather on Heffley's identification of a partial bus number and the fact that Silmon's route that day happened to pass by the location of the accident. Next, appellants complain that Carreon was not qualified to testify regarding the accuracy of Metro's IVOMS and GPS system. We assume, without deciding, that it was error to admit Carreon's testimony. We conclude, however, that any error in admitting the testimony was harmless.

"No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error

complained of probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). To obtain a reversal based upon the improper admission of evidence, the appellant must show that the trial court's error was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *Bhatia v. Woodlands N. Hous. Heart Ctr.*, 396 S.W.3d 658, 668 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Generally, error in the admission of evidence is not grounds for reversal unless the appellant can demonstrate that the judgment "turns on" the challenged evidence. *Id.* The erroneous admission of evidence is harmless if it is merely cumulative. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *e.g.*, *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 620 (Tex. 1999) (erroneous admission of expert testimony was not harmful when the record contained abundant testimony from other witnesses establishing the fact at issue). We review the entire record to determine whether an alleged error is harmful. *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 25 (Tex. App.—Texarkana 2011, pet. denied).

Here, the record contains ample evidence establishing that Silmon was driving the bus that caused the accident. Specifically, documentary evidence admitted at trial shows that Silmon was driving Bus 4821 on the day of the accident. Heffley testified that "2" and "1" were the last two digits of the bus's identification number. The dispatch sheet showed that the only Park'N'Ride bus operating in the vicinity on the day of the accident was Bus 4821. The trial court admitted evidence indicating that Bus 4821's onboard computer was malfunctioning and may have recorded inaccurate location data. Carreon's testimony was merely cumulative of other evidence demonstrating that Silmon was driving the bus that caused the accident and that the IVOMS location data was inaccurate. The properly admitted evidence is sufficient to support the jury's

verdict. The trial court's error in admitting Carreon's testimony was therefore harmless.

We overrule appellants' third issue.

## Impeachment

In their fourth issue, appellants argue that, under rule 613 of the Texas Rules of Evidence, the trial court erred when it precluded them from impeaching Heffley with his prior inconsistent statements. We disagree.

The admission or exclusion of evidence is within the sound discretion of the trial court. *See Allen*, 15 S.W.3d at 527–28. To impeach a witness with a prior inconsistent statement, "the witness must be told [1] the contents of such statement and the [2] time and [3] place and [4] the person to whom it was made, and [5] must be afforded an opportunity to explain or deny such statement." Tex. R. Evid. 613(a).

The following are relevant excerpts from appellants' counsel's examination of Heffley. Questions pertinent to our analysis are presented in bold print:

Q. I want to kind of figure out where exactly to start. You were asked where you first saw this bus. You remember that question?

A. Yes, sir.

Q. And I think you said something like Antoine and 34th?

A. Yes, sir.

**Q. Have you ever said anything different in terms of when you saw the bus the first time?**

A. Like I said, I made a lot of depositions. Like I said, this got juggled around three or four times. I don't have any of that in front of me, so I cannot tell you "yes" or "no."

**Q. Well, I guess my question is: Are you certain about that, or is it you're not certain and you may have said something different?**

14

A.    I'm certain the bus was on 34th Street.

**Q.    But in terms of the first time you saw it, do you remember saying anything different than it was at Antoine?**

A.    I cannot recall that.

At this time, appellees' respective counsels objected on hearsay grounds. They argued that appellants' counsel was not setting the proper predicate for impeachment with a prior inconsistent statement. The trial judge asked the attorneys to approach the bench, and a discussion was held off the record. Appellants' counsel then continued his questioning:

> **Q. Mr. Heffley, remember on July 13, 2010, at 12:40 in the afternoon, being asked where had you first observed the Metro bus?**
>
> A. Not particularly.
>
> **Q. Do you remember answering that question and saying - -**

Appellees' respective counsels objected again on hearsay grounds. Another discussion was held off the record, and appellants' counsel continued:

> **Q. My question is, isn't it true the first time you saw this bus was when it was making a right turn to get on to 290 following him up the freeway? Did you ever say that?**
>
> A. I could have. Like I said, I gave a lot of statements to a lot of people.
>
> . . .
>
> Q. And isn't it true, sir, that you were actually right beside the bus?
>
> A. No, sir.
>
> **Q. Did you ever say that you were right beside him when he was making a right turn to get on to 290?**
>
> A. Well, you asked me -- you know, we're making the turn. So making the turn and being at the intersection is two different things. If we're making the turn, I'm besides him while we're making the turn.
>
> . . .

**Q. Isn't it true that you've said that it had its emergency flashers on?**

A. Not that I remember.

Appellee Toltecatl's counsel objected on hearsay grounds at this point. Appellants' counsel stated that he was attempting to refresh the witness's recollection. The court overruled the objection, and appellants' counsel continued his questioning:

Q. Sir, I'd like you to look here and I'd like you to look here. See that?

A. No, not really.

Q. Take your time. Do not read it out loud. Just look at it and then look at this. Does that refresh your recollection as to whether you have ever said the bus had its hazards on?

A. Yes.

Q. And you're recollection now would be what?

A. That the hazards would be on.

. . .

**Q. Okay. Isn't it true that you said that that it had impacted - - actually impacted the back of that bus and "I watched it crinkle the back of the bumper"?**

A. I can't remember that, not in the back of the bus.

Appellees' respective counsels objected to this question on hearsay grounds. Appellants' counsel asserted that he was trying to refresh the witness's recollection. The court sustained the objection. Appellants' counsel continued his questioning and passed the witness without further objections from opposing counsel.

During his questioning of Heffley, appellants' counsel never informed Heffley of "where" and "to whom" the allegedly impeaching statements were made. On several occasions, appellants' counsel did not tell Heffley the contents of his allegedly inconsistent statements. Appellants' counsel failed to lay the proper

predicate for introduction of the allegedly impeaching evidence, and the trial court did not abuse its discretion in refusing to admit it. *Cf. Williams v. State*, 976 S.W.2d 330, 331–32 (Tex. App.—Corpus Christi 1998, no pet.) (analyzing similar issue under Rule 613(b)). We overrule appellants' fourth issue.

## CONCLUSION

Having overruled each of appellants' issues on appeal, we affirm the trial court's judgment.


/s/           Marc W. Brown
                 Justice

Panel consists of Justices Jamison, Busby, and Brown.